BERNARD A. ENRIGHT AND ANOTHER v.
CITY OF BLOOMINGTON.

203 N. W. 2d 396.

January 5, 1973—No. 43193.

*Adrian E. Herbst,* City Attorney, and *Gary Gandrud,* Assistant City Attorney, for appellant.

*Kempf & .Ticen* and *James D. Kempf,* for respondents.

Heard before Knutson, C. J., and Otis, Rogosheske, and Peterson, JJ. Reconsidered on the record en banc.

PER CURIAM.

Plaintiffs brought this mandamus action to compel the city of Bloomington to grant them a conditional-use permit to construct a gasoline service station on their property in an area zoned for industrial use. The district court granted mandamus and this appeal followed. We affirm.

Plaintiffs' property borders on the east side of Lyndale Avenue South between 78th and 79th Streets in Bloomington. This is in the southeast quadrant of the intersection of Lyndale Avenue and Interstate Highway No. 494. The area is now zoned industrial. Plaintiffs have their home on the property and, in addition, an 11-unit motel and a 48-unit trailer court. This use ante-

dated adoption of the zoning ordinance and is therefore a permissible nonconforming use.[1]

The Bloomington zoning ordinance provides a procedure whereby one owning property in an industrial zone may obtain a conditional- or special-use permit to construct a service station provided certain conditions or standards are met. Bloomington City Code, § 11.13 C. The city council is the final authority as to whether or not a conditional-use permit will be granted; but if the party seeking the permit meets all the standards prescribed in the ordinance, the council has no discretion to deny the permit. Its refusal to grant the permit in such circumstances is arbitrary as a matter of law, and mandamus will lie to compel the council to grant the permit. See, Zylka v. City of Crystal, 283 Minn. 192, 167 N. W. 2d 45 (1969). The issue is whether, in the circumstances of this case, the council's denial of the permit was arbitrary as a matter of law.

Pursuant to established administrative procedures, the city traffic engineer, Mr. Lyle Berg, investigated plaintiffs' proposed use and reported his reservations to the planning department. His main objection was not that the proposed service station would generate increased traffic volume—indeed, he felt that it would not—but that drivers leaving the station would constitute a traffic hazard because of the proximity of the station to the freeway *entrance*, a hazard which would not be present if the station were to close to a freeway *exit*, as is the case with two service stations across the street, on Lyndale Avenue, from plaintiffs' property. It was Berg's opinion that an industrial use of the property would not create as great a hazard because employees of an industrial establishment would become familiar

---

[1] "A use which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance although it does not comply with the use restrictions applicable to the area in which it is situated, is commonly referred to as a 'nonconforming use.'" 1 Anderson, American Law of Zoning, § 6.01.

with the driving hazards and therefore be more careful than the more occasional customer of a gasoline service station.

The city planner, Mr. Robert Webster, thereafter made an independent investigation of the proposed use for the planning department. He concluded that the only real difference between plaintiffs' property and other property on which the city had permitted construction of service stations was that plaintiffs' property was not a separate parcel but was part of a larger parcel which involved nonconforming uses. He thought it improper to permit a service station to be built in among the trailers and motel units and that, with the service station situated where plaintiffs wanted it, it would be difficult to later develop the remainder of plaintiffs' property for industrial uses. Webster's recommendation was that as long as plaintiffs used their property for a nonconforming use, the planning commission should deny any of plaintiffs' applications for conditional-use permits for any part of the property. According to Webster, the objective of denying the permit in this case should be to hasten the discontinuance of the nonconforming use on plaintiffs' property. He would not have objected to plaintiffs' proposed use if the plans had included elimination of the nonconforming use.

The city planning department, based upon the Berg and Webster investigations, made a written report to the planning commission in which it stated:

"Staff cannot recommend approval of this application for a conditional use permit for a service station at this location. It would have the effect of creating the type of congestion which should be eliminated, rather than created, at this location.

"Existing use of the land as a trailer park and motel in the I-3 zoning district is a non-conforming use and until such time as the non-conforming use is eliminated and the total plan for the property approved, no use permit should be considered for any type of retail use which would add to the current traffic problems on Lyndale Avenue.

"Approval of the subdivision and the conditional use permit

for the service station would eliminate any rights the property maintains as a non-conforming use. Applicant should be advised that the subdivision and the use permit cannot be considered unless he is prepared to remove all types of residential development from this site."

The city planning commission,[2] which received this report, held a final public hearing, at which plaintiffs were represented by counsel, on November 14, 1968.[3] After discussion this advisory commission unanimously adopted a motion recommending to the city council that it deny the permit. It made this recommendation for the stated reason that it could not make three of the findings required by the ordinance as a condition to granting the permit. It found, to the contrary, that (1) the development proposed would have an adverse effect on existing and future development, (2) the proposed use would not provide an economic return to the community commensurate with other industrial uses, and (3) the access to the property is not off an interior industrial street and the traffic generated would interfere with the normal patterns of circulation. In addition, the commission offered a fourth reason, one not mentioned in the enumeration of conditions in the ordinance, namely, that the continuation of a nonconforming use should not be encouraged by the addition of another use.

The city council conducted a public hearing on January 6, 1969, at which plaintiffs were represented by counsel. The council, by a vote of 4 to 2, with 1 abstention, accepted the planning commission's recommendations and adopted its findings. Plaintiffs' application for a conditional-use permit was then denied.

---

[2] The city planning commission is an advisory commission composed of a cross-section of the citizens of the community. See, Bloomington City Code, c. 70.

[3] The planning commission had earlier held a hearing on this matter and recommended to the council that it deny the permit, but thereafter and council referred the matter back to the commission for further study and consideration.

Plaintiffs' mandamus action to compel the defendant city to issue the conditional-use permit must be measured by the principles stated in Zylka v. City of Crystal, 283 Minn. 192, 167 N. W. 2d 45 (1969). We pointed out in Zylka that the municipal zoning ordinance set forth no standards to guide the planning commission and held that the council's action was prima facie arbitrary because the council accepted the planning commission's recommendations without making any findings or giving any legally sufficient reasons for its denial of the permit. The case at bar differs from Zylka in that the ordinance of defendant municipality does contain standards to guide the planning commission, and the council did state reasons for its actions. However, the council made no independent findings of its own but deferred to the expertise of the planning department.

In Zylka, we pointed out that "conditional use permits" are not granted as a matter of right and that factors such as traffic congestion, population density, noise, and effect on adjoining land values must be considered as they bear on public health, safety, or general welfare. However, we added this caveat:

"* * * [A]n arbitrary denial may be found by a reviewing court when the evidence presented at the hearing before the municipal governing body and the reviewing court establishes that the requested use is compatible with the basic use authorized within the particular zone and does not endanger the public health or safety or the general welfare of the area affected or the community as a whole." 283 Minn. 196, 167 N. W. 2d 49.

Here, the area in question was zoned for industrial purposes. There were two gasoline service stations directly across the street. The city planner revealed that he would have no hesitation in acquiescing in the permit provided the plaintiffs' nonconforming use was discontinued. Indeed, the city argued that, if the property were used for industrial purposes, the same volume of traffic moving in and out of the property would not be a hazard because the drivers would be familiar with the problems

confronting them as they emerged. Concern for the health and safety of those residing on the property was couched only in general terms. As we have noted, Mr. Webster candidly expressed a purpose to hasten the discontinuance of the nonconforming use. The report of the planning commission included the statement to which we have alluded that the permit would not be considered if the property were used for residential purposes. On this appeal, the city takes the position that it has not only the right but the duty to end the existing nonconforming use.

A bare majority of the council denied plaintiffs' application for the permit. The trial court has made a finding that the council's apparent motive was to end the nonconforming use. On this record we are not disposed to hold the court's findings have no support in the evidence. The order is accordingly affirmed.

Affirmed.

PETERSON, JUSTICE (dissenting).

Bloomington's city council, as prescribed by Zylka v. City of Crystal, 283 Minn. 192, 167 N. W. 2d 45, stated reasons for denying the conditional-use permit—reasons conformable to the zoning ordinance guidelines for the city planning commission. The majority assumes that these findings were nothing more than a deferential adoption of the planning commission report—a variation of the trial court's apparent assumption that the planning commission itself deferred completely to the Webster report. The effect of these assumptions is to conclude that the council's stated reasons were a sham to disguise the council's sole objective of hastening the discontinuance of plaintiff's nonconforming use.[1]

---

[1] The trial court considered this objective impermissible and for that reason issued its writ of mandamus. In the different context of an expanded nonconforming use, we recently observed in County of Freeborn v. Claussen, 295 Minn. 96, 102, 203 N. W. 2d 323, 327 (1972) that a restriction against expansion is not unreasonable, since it "will enhance the possibility that [a landowner's] nonconforming use will eventually be phased out."

We need not so discredit the motives of the city council, for the internal evidence supports a wholly different inference. The planning commission made three additional findings independent of the reason proposed by Webster, strongly indicative that the commission intended to base the recommended denial on more than one factor. The city council, concurring with those reasons, was not required to add or subtract from those reasons, or re-word them, as a test of its "independence."

The determinative issue is whether plaintiffs established that their proposed use met all the standards and conditions pre-scribed by the zoning ordinance, so that the council's denial of the permit was without a reasonable basis. The failure of plain-tiffs' proposed use to meet any one or more of the conditions or standards reflected in the three findings and expressed in the ordinance would bar plaintiffs from obtaining a permit for such proposed use. One of the council's findings, stated above, would constitute a legally sufficient basis for its action. The council found that the access to plaintiffs' proposed service station would not be off an interior industrial street and that the traffic gen-erated by the station would interfere with the normal patterns of traffic circulation. The minutes of the council meeting indicate that the council was independently aware of the arguments pro and con on this point, just as the divided vote of the council evinced it. Its adoption of the commission's finding on this point was an implied adoption of the views of the city traffic engineer, Berg, whose investigation and report clearly provided reasonable support for this finding of the council. I would reverse.

ROGOSHESKE, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Peterson.