## MINNETONKA CONGREGATION OF JEHOVAH'S WITNESSES, INC. v. KENNETH V. SVEE AND OTHERS.

226 N. W. 2d 306.

February 7, 1975—No. 45075.

*Carl F. Dever,* City Attorney, and *Clifford G. Nelson,* Special Assistant City Attorney, for appellants.

*Moore, Costello & Hart, B. Warren Hart, Denis L. Stoddard,* and *J. Patrick Plunkett,* for respondent.

Heard before Peterson, MacLaughlin, and Yetka, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

Appeal from a judgment granting plaintiff a peremptory writ of mandamus ordering defendants to issue a conditional-use permit to plaintiff to enable it to construct a church on its property located in the city of Minnetonka. We affirm.

On August 8, 1973, plaintiff filed an application with the city of Minnetonka for a conditional-use permit for the construction of a church and adjacent parking lot upon a certain tract of land[1] located within the limits of that city. The real estate in question was zoned "R-1," under which classification a conditional-use permit was required for plaintiff's proposed use. The matter was referred to the City Planning Commission and was first considered by that body at a meeting held on September 6, 1973. Prior to that meeting, the city zoning administrator, Kenneth B.

---

[1] The legal description of the property involved is as follows: "That part of the West 419.4 feet of the Northeast Quarter of the Northeast Quarter of the Southeast Quarter of Section 22, Township 117 North, Range 22 West of the 5th Principal Meridian lying Northerly of the Northerly right-of-way line of State Highway No. 7, according to the duly recorded map or plat thereof, and

"That part of Lot 9 lying Easterly of the Easterly line of Lot 8, extended Southerly to the Southerly line of said Lot 9, Block 1, Sjoberg Addition, according to the plat thereof on file or of record in the office of the Register of Deeds in and for the said Hennepin County, and which lies Northerly of the Northerly right-of-way line of State Highway No. 7."

Svee, sent a memorandum to the planning commission stating that his department "would have no objections to this type of use on this particular [plaintiff's] lot." At the September 6 meeting, the planning commission referred the matter to a task force for further study. At the task force meeting, Donald G. King, acting city planning director, was requested to conduct a study on the effect of plaintiff's proposed use upon traffic and property values. On September 18, 1973, Mr. King filed his report with the commission which included the following conclusions:

1. "It does not appear as though this request [plaintiff's application] would have any appreciable effect more or less than that [traffic] which is already anticipated."

2. With regard to aesthetics, the proposed building design was viewed as "mediocre."

3. The proposed use would not (in the opinion of the city assessor) affect the value of adjacent property "in any manner."

4. "In Summary it does not appear as though the use requested would have any significant physical detrimental effect to the neighborhood or the City."

The planning commission again considered plaintiff's application on September 20, 1973, at which time considerable opposition from residents of the property surrounding the land in question was presented. The commission voted to recommend that plaintiff's application be denied. Mr. Svee, on the following day, forwarded that recommendation to the city council, stating as follows:

"The Planning Commission recommended disapproval of this permit, *and because of the great opposition of the nearby neighborhood,* the Zoning Administrator concurs with the action of the Planning Commission." (Italics supplied.)

The city council first considered the matter on October 1, 1973, at which time both plaintiff and the neighborhood opposition were allowed to express their views. The council passed a motion

to table the matter for 2 weeks in order for plaintiff and the opponents of the application to work out an acceptable solution. An attempt to arrive at such a compromise was unsuccessful. The council met on October 15, 1973, at which time plaintiff's application was again considered. The spokesman for the neighborhood opposition expressed the following reasons in urging denial of the permit:

(1) Traffic.

(2) Building structure and appearance.

(3) Sanitation and drainage.

(4) Basic effect on the neighborhood.

The council passed a motion (5 to 2) to deny the application on grounds *the traffic would have an adverse effect on the neighborhood* and because *"this type of development would be inconsistent with surrounding R-1 land use."*

Plaintiff then brought a petition for a writ of mandamus in district court to compel issuance of the conditional-use permit. After determining that no factual basis existed for the stated grounds for denial, the district court granted the relief sought. Defendants appeal from the judgment entered.

It seems apparent that the council's decision took into account the strength of neighborhood opposition. One of the members of the city council at the time plaintiff's application was denied testified that it was the council's policy to grant conditional-use permits unless there was such opposition. It is noteworthy that the entire council was up for reelection in November 1973.

The issues on this appeal are:

(1) Could the trial court, in an action for mandamus, properly find from the evidence placed before the council that the council's denial of plaintiff's application for a conditional-use permit was arbitrary and capricious?

(2) Does the record support the trial court's decision that plaintiff was denied equal protection and freedom of religion because the council had granted conditional-use permits to other congregations and organizations similarly situated?

(3)  Does the record support the trial court's decision that plaintiff was deprived of a valuable property right without due process of law?

The trial court made the following findings of fact:

"The evidence available to the City Council and to this Court does not reasonably support a finding that the presence of Petitioner's church on the aforesaid land would cause an adverse traffic problem on the neighborhood or that the church is a development inconsistent with surrounding R-1 land use.

"The use of the aforesaid land as a site for Petitioner's church is a use which is compatible with the basic R-1 use authorized in this neighborhood.

"The evidence available to the Minnetonka City Council and to this Court establishes that the proposed use does not endanger the public health or safety or general welfare of the surrounding neighborhood or the community as a whole."

Upon these findings, the court concluded:

"The denial by the Minnetonka City Council of Petitioner's application for a conditional use permit and a building permit to construct a church on the above described land was arbitrary and capricious and is therefore invalid."

Defendants, citing Milwaukie Company of Jehovah's Witnesses v. Mullen, 214 Ore. 281, 330 P. 2d 5, 74 A. L. R. 2d 347 (1958), contend that where the evidence before the board leaves room for two opinions, then a reviewing court must defer to the discretion of the governmental body. In that same vein, defendants further urge that a decision of a governmental unit must stand unless that decision is *clearly* and plainly against the weight of the evidence. Defendants conclude that the evidence presented does not provide such a basis for the trial court's reversal of the council's decision in this case. Furthermore, defendants question the propriety of the issuance of a writ of mandamus.

At the outset, since the defendants raise some question as to

the proper remedy, we hold that mandamus is the proper remedy in this case. In a recent decision, this court has allowed mandamus to lie in an action to compel the issuance of a conditional-use permit. Enright v. City of Bloomington, 295 Minn. 186, 203 N. W. 2d 396 (1973). See, also, Main Realty, Inc. v. Pagel, 296 Minn. 362, 208 N. W. 2d 758 (1973).

Next arises the question of the scope of review of a decision reached by a governing body in which an application for a conditional-use permit is denied. In Zylka v. City of Crystal, 283 Minn. 192, 196, 167 N. W. 2d 45, 49 (1969), this court stated:

"* * * [A]n arbitrary denial may be found by a reviewing court when the evidence presented at the hearing before the municipal governing body and the reviewing court establishes that the requested use is compatible with the basic use authorized within the particular zone and does not endanger the public health or safety or the general welfare of the area affected or the community as a whole." [2]

In the case of Inland Const. Co. v. City of Bloomington, 292 Minn. 374, 379, 195 N. W. 2d 558, 562 (1972), this court stated that the burden of proof required to obtain a conditional-use permit is "much lighter" than that imposed on an applicant for a variance.

The ordinance in the present case contained no specific standards governing whether or not a conditional use should be granted. In the absence of such standards, this court has held the denial of a conditional-use permit *more* vulnerable to a finding of arbitrariness. Hay v. Township of Grow, 296 Minn. 1, 206 N. W. 2d 19 (1973).

---

[2] This standard of review has been consistently recognized in the following line of decisions: Metro 500, Inc. v. City of Brooklyn Park, 297 Minn. 294, 211 N. W. 2d 358 (1973); Main Realty, Inc. v. Pagel, 296 Minn. 362, 208 N. W. 2d 758 (1973); Enright v. City of Bloomington, 295 Minn. 186, 203 N. W. 2d 396 (1973); Twin City Red Barn, Inc. v. City of St. Paul, 291 Minn. 548, 192 N. W. 2d 189 (1971).

Most recently in Board of Supervisors of Benton Township v. Carver County Bd. of Commrs. 302 Minn. 493, 499, 225 N. W. 2d 815, 819 (1975), this court has stated:

"Moreover, since zoning laws are a restriction on the use of private property, we hold that there is a heavier burden required on the part of those who challenge the *approval* of a conditional-use permit, as compared to the degree to proof required of a landowner whose application is denied."

Turning now to the evidence, there is little question that the trial court could find that the traffic created by the proposed use would not endanger the public health, safety, or welfare. In contrast, the council was provided with no evidence to support its purported findings. The acting city planner had presented a written memorandum expressly stating that said use would not create traffic problems, and the city zoning administrator had filed a memorandum stating that his department "would have no objection to this type of use on this particular lot." That is not to say that a municipal body is bound by the recommendations of its own experts. We do not so hold. But it must have some basis for a finding that a traffic problem would exist. It is self-evident that any church will cause heavier vehicular traffic, but for that matter, so would residential construction. However, that is far from the creation of a traffic hazard.

Similarly, the second ground advanced for denial, namely, that "this type of development would be inconsistent with the surrounding R-1 land use," is so vague that it prompts little consideration at this stage of the proceedings. Suffice it to say that the controlling ordinance specifically provides for churches. Moreover, while we do *not* hold that property owners adjacent to the proposed use do not have a right to object and to be heard, the *general* objections of the opponents of the application are not competent evidence to support such a finding. Finally, and perhaps most importantly, there was no attempt made, either by the opponents or the council, to suggest or to impose condi-

tions which would insure proper landscaping, setbacks, or ingress and egress.

The other issues raised involve constitutional matters which need not be considered and decided by this court in light of our determination of the first issue.

Affirmed.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.