**ROCKVILLE TOWNSHIP, Respondent,**

v.

**David W. LANG, Appellant.**

**No. CX–85–2034.**

Court of Appeals of Minnesota.

May 13, 1986.

Stephen Lickteig, Timothy D. Clements, Cold Spring, for respondent.

William P. Kain, St. Cloud, for appellant.

Considered and decided by HUSPENI, P.J., and LESLIE and CRIPPEN, JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

This is an appeal from a trial court judgment denying a writ of mandamus to compel respondent Rockville Township to issue a special use permit for appellant David Lang's fur farming operation and enjoining appellant's continuing operation of the farm without a special use permit. Respondent initially denied appellant's application for a special use permit and then sued for injunctive relief when appellant continued to operate his fur farm in violation of the local zoning ordinance. We affirm.

## FACTS

In the fall of 1982, with the purpose of operating a fox and mink fur farm, appellant purchased forty acres of land in an area of Rockville Township zoned farm residential. Although the local zoning ordinance required a special use permit for fur farming in areas zoned farm residential, appellant was not aware of the require-

ment and only obtained a state license to raise fur bearing animals.

On May 4, 1984, appellant applied for and was issued a building permit from Rockville's building inspector for the construction of permanent housing for the animals. The building inspector informed him that he could not operate the fur farm without a special use permit from the township. That same day, a member of the Town Board received a complaint from a neighboring landowner about the foul odor emanating from appellant's property. Two Board members visited Lang at the farm and told him that he would have to obtain a special use permit if he wanted to continue operating his fur farm. Lang told them that he had a permit from the state and had not known of any additional requirements imposed by the township. Lang applied for the permit soon afterwards.

The Board considered Lang's application in June 1984 at a public hearing held in conjunction with the Board's monthly meeting. The hearing was attended by several neighbors who opposed Lang's operation. The Board directed Lang to prepare a written summary of his efforts to control the smell and told him to "try and clean up the odor." The matter was then tabled until the next Board meeting. The July meeting was again attended by neighbors who argued against issuance of the permit. Lang told the Board that because he had two jobs he had been too busy to make the necessary improvements for reducing the smell. The Board again tabled the matter until the next meeting.

At the August meeting, Lang presented a document showing the improvements he had made. They included planting trees as a windbreak, planting corn on some of the acreage, building of protective covering for the animals, removal of manure on a regular basis, and spreading of barn lime every third day. The document stated that future plans included a guard fence surrounding the animals and sheds for all the animals. Twenty neighbors presented a petition in opposition to the permit. The Planning Commission also recommended denial. The Board unanimously voted to deny the special use permit, but gave Lang until January 1985 to harvest the crop and wind up operations.

Lang harvested his crop but retained his breeding stock. In January he reapplied for a special use permit. Respondent, which had continued to receive complaints about the farm's noxious smell, refused to reopen the matter and instead petitioned the trial court for injunctive relief to force appellant to cease operating the fur farm in violation of the zoning code. Appellant counterclaimed for a writ of mandamus to compel respondent to issue the permit.

At trial, Board members testified that they delayed the decision on the permit because they wanted to avoid forcing appellant to lose his livelihood and hoped that some resolution of the odor problem could be found. However, they testified that the inadequacy of appellant's efforts to control the smell persuaded them to deny his application. Some of the Board members had inspected the property and testified about the bad smell, although one testified that he was not personally offended by it. Lang testified that he understood the special use permit would eventually be granted because he was issued the building permit and was directed to expend efforts and money constructing the permanent housing for the animals and to take other steps to minimize the smell. The Board members testified that they did not encourage or give appellant permission to construct the buildings. The building inspector testified that he had no reason to deny the building permit itself but that he told appellant use of the buildings to house furbearing animals would require a special use permit.

The trial court found appellant had been informed prior to his construction of the animal housing that a special use permit was required under the zoning ordinance and that respondent made no representations, either express or implied, that the permit would be granted if he built the housing. The trial court also found that the mink and fox odor was noxious and a nuisance. Finally, the trial court found

that appellant's violation of respondent's zoning ordinance was detrimental to the township and its inhabitants in that it frustrated the township's comprehensive plan and would result in irreparable harm for which respondent had no adequate legal remedy.

Accordingly, the trial court enjoined appellant from further operation of the fur farm, concluding that equity required that appellant "cease and desist from the operation and conduct of fur farming * * * without a special use permit." The trial court also concluded (1) that respondent was not estopped from enforcement of the zoning ordinance, (2) that appellant's reliance, if any, on respondent's conduct at the public hearings was unreasonable, (3) that respondent's action in denying appellant's application was not arbitrary, capricious, unreasonable, or discriminatory, and (4) that mandamus did not lie to compel respondent to issue the permit to appellant. Lang appeals from the judgment entered in accordance with the trial court's conclusions of law.

## ISSUE

Was the denial of the special use permit unreasonable, arbitrary, or capricious?

## ANALYSIS

Both parts of the trial court's judgment, the granting of the injunction and the denial of the writ of mandamus, are based on the legitimacy of respondent's action in refusing to grant appellant a special use permit. Provisions in local zoning ordinances for special use permits are designed to meet problems that arise when a certain use, although generally compatible with a particular zoning classification, should not be permitted as a matter of right in every area within the zone because of hazards inherent in the use itself or special problems that its proposed location may present. *Zylka v. City of Crystal*, 283 Minn. 192, 195, 167 N.W.2d 45, 48 (1969).

A municipality has broad discretionary power to grant or deny an application for a special use permit. *Id.* at 196, 167 N.W.2d

at 49. When, as here, a zoning ordinance expressly authorizes the proposed use by special permit in the discretion of the governing body of a municipality, the denial of the permit must be for reasons relating to public health, safety, and general welfare. *C.R. Investments, Inc. v. Village of Shoreview*, 304 N.W.2d 320, 324 (Minn.1981). If the denial of the special use permit is not unreasonable, arbitrary, or capricious, it will be upheld on appeal. *See Honn v. City of Coon Rapids*, 313 N.W.2d 409, 416–17 (Minn.1981). Upon review of a municipality's denial of a special use permit, an appellate court must independently examine the municipality's record and decision without according any special deference to the same review conducted by the trial court. *Id.* at 415.

■ Whether the denial of a special use permit is unreasonable or arbitrary is determined by reference to the standards contained in the local zoning ordinance. *Northwest Residence, Inc. v. City of Brooklyn Center*, 352 N.W.2d 764, 767 (Minn.Ct.App.1984), *pet. for rev. denied*, (Minn. Jan. 4, 1985). The Rockville Township Zoning Ordinance § 10–020 states that special uses may be permitted when uses 1) are deemed essential or desirable to the public convenience and welfare, 2) are in harmony with the various elements of objectives of the master plan, and when 3) the location, plan, and character of the development are first considered by the Planning Commission. In addition, section 13–100 of the ordinance states that all plans for the improvement, development, alteration, or expanded use of any property shall be examined and approved by the Town Board prior to the issuance of any permit whatsoever. The standards establish a public policy towards special uses that favors only those applicants who not only show that the use will not endanger or be detrimental to the public welfare but who also show that the proposed use is essential or desirable to the public welfare.

■ The minutes of the three Town Board meetings where appellant's applica-

tion was considered and the testimony adduced at trial reflect a principal concern with the odor created by appellant's fur farming operation. The trial court found that the odor was noxious and a nuisance. The Board gave appellant time to correct the problem; he failed to do so. Given the standards contained in the zoning ordinance, particularly that which refers to a use that is "desirable," the Board's denial of the special use permit was neither unreasonable nor arbitrary.

Appellant raises the additional argument that respondent is estopped from denying the special use permit because respondent issued the building permit and asked appellant to make other improvements to his operation. Appellant argues that he detrimentally relied on respondent's requests such that the ultimate denial of his application was highly inequitable and unjust and, therefore, unreasonable and arbitrary.

A local government exercising its zoning powers will be estopped only when

a property owner, (1) relying in good faith (2) upon some act or omission of the government, (3) has made such a substantial change in position or *incurred such extensive obligations and expenses* that it would be *highly inequitable* and unjust to destroy the rights which he ostensibly had acquired.

*Ridgewood Development Co. v. State*, 294 N.W.2d 288, 292 (Minn.1980) (emphasis in original) (quoting Heeter, *Zoning Estoppel: Application of the Principles of Equitable Estoppel and Vested Rights to Zoning Disputes*, 1971 Urb.L.Ann. 63, 66).

■ Appellant focuses primarily on his claim that he relied detrimentally on respondent's requests for remedial action. We also observe that the building inspector's issuance of a permit to build housing for the animals may have been in conflict with other provisions in the zoning ordinance. (Rockville Township Zoning Ordinance § 15–010 (no building permit shall be issued until the Building Inspector has certified that the proposed building complies with the provisions of this ordinance)). Although respondent professes that its method of handling the case was well-intentioned, we agree that respondent's action has rendered appellant's investments and efforts futile, at least for the time being. Had the special use permit been issued subject to precise conditions, as is permitted by the zoning ordinance, appellant's investments could have been made with a greater guarantee of return.

However, the zoning ordinance also provides that the Board must examine and approve all plans for improvements to the property in question prior to the issuance of any permit. Here, appellant's improvements and proposals for future improvements failed to gain the Board's approval. Moreover, the Board gave appellant additional time in which to address its concerns about the smell and, after denying the permit, allowed appellant to harvest the crop and gave him several months to conclude his operation.

The aims of the municipality are evident in the zoning ordinance and have been clear from the onset of this case. Appellant had ample opportunity to find remedies that would enable him to continue his business without harming neighboring landowners. Nothing in the record indicates that respondent would arbitrarily reject appellant's application even if he did control odors. In fact, evidence to the contrary is present in the record; the Planning Commission provided appellant with suggestions on how to control the smell, and the Board gave appellant time to implement these and other efforts. In addition, Board members testified that they denied the permit reluctantly because of appellant's economic dependence on the fur farm.

■ Under the circumstances, representations about an eventual permit may have aroused false hopes of appellant. We do not find evidence, however, that appellant was led to believe the Town Board would forego a primary demand for successful control of obnoxious odors. Moreover, the evidence does not compel a finding that appellant's investments resulted in such a substantial change in position or in such extensive obligations and expenses as to

create a highly inequitable and unjust situation requiring estoppel of respondent's action.

 Appellant's final argument is that the trial court erred in granting respondent injunctive relief because any harm suffered by respondent was not irreparable harm. The granting of a permanent injunction generally rests within the sound discretion of the trial court. *Theros. v. Phillips*, 256 N.W.2d 852, 859 (Minn.1977). Moreover, Minnesota recognizes that an injunction is often the most efficient way for a local governmental unit to deal with continuing zoning violations. *City of Minneapolis v. F & R, Inc.*, 300 N.W.2d 2, 4 (Minn.1981). The *F & R* case stated that

> [t]he purpose of use restrictions is not punishment but the attainment of conforming uses. An injunction ordering compliance with use restrictions is peculiarly suited to this end.

*Id. See also Itasca County v. Rodenz*, 268 N.W.2d 423, 424 (Minn.1978) (injunction appropriate when construction of building constituted a continuing violation of the zoning ordinance); *City of Mahtomedi v. Spychalla*, 308 Minn. 429, 432, 243 N.W.2d 31, 33 (1976) (damages are not an efficient and practical remedy available to a municipality seeking to require a property owner to comply with zoning regulations and agreements).

 There is apparent irreparable harm to a governmental unit by a continuous and knowing violation of that body's duly promulgated laws and regulations. To permit such violations is to deny the local unit's authority to govern. The cited cases approving the use of injunctions in such situations affirm this conclusion. The trial court's injunction, by requiring appellant to cease and desist operations without a special use permit, merely prevented a continuing violation of the local zoning ordinance and was an appropriate remedy to relieve the harm suffered by respondent.

## DECISION

Respondent did not act unreasonably, arbitrarily, or capriciously in denying a special use permit to appellant. The injunction was an appropriate remedy to enforce respondent's decision and to obtain compliance with the zoning ordinance.

Affirmed.