## MICHAEL E. ZYLKA v. CITY OF CRYSTAL.

167 N. W. (2d) 45.

April 3, 1969—No. 41462.

*William J. McPherson,* for appellant.
*William A. Soules,* for respondent.

Heard before Knutson, C. J., and Nelson, Rogosheske, Sheran, and Frank T. Gallagher, JJ.

ROGOSHESKE, JUSTICE.

Defendant, city of Crystal, appeals from a judgment declaring that the city council was arbitrary and unreasonable in denying plaintiff landowner a special-use permit to construct a gasoline service station on property located within an area of the city zoned for commercial use, and from an order denying a new trial.

Plaintiff is the owner of a parcel of land located on the northwest cor- ner of 32nd Avenue North and Douglas Drive in the city of Crystal. Under the city's comprehensive zoning ordinance, this land is within an area classified as a "Commercial C-1" district, within which a gasoline service station may be constructed and operated upon issuance of a special-use permit by defendant's governing body, the city council. The neighborhood adjoining plaintiff's land is largely residential. Plaintiff, together with Clark Oil & Refining Corporation as vendee of the property under a conditional sales contract, applied for a special-use permit to construct a service station on the property. In conjunction with this application and as required by the ordinance, plaintiff and his coapplicant submitted a detailed plot plan for the proposed construction to defendant's city engineer, who reviewed it, modified it, and ultimately approved it as complying with all of the city's building construction regulations. Defendant's planning commission held a hearing on plaintiff's application. Without preserving any record of the proceedings, making any findings of fact, or giving any reasons for its decision, the commission recommended to the city council that it deny the application. The city council reviewed this recommendation and, without itself making any findings of fact or giving any reasons for its decision, denied plaintiff's application.

Plaintiff then brought this action for declaratory relief, enjoining the city of Crystal from interfering with construction of the service station in accordance with the plans approved by the city engineer and the state fire marshal. After a hearing, the trial court found that the planning commission had recommended denial, after which the city council denied the application without making findings or giving any reasons; that the property was "zoned * * * for commercial purposes including gasoline service stations"; that it "is entirely suitable for the construction

and operation of a gasoline service station"; that such a use of it would not constitute a nuisance or "unduly interfere with the health, morals, safety or welfare of the neighborhood or the community"; and that the "City Council, acting administratively and not legislatively, has under the authority granted to it under its zoning ordinance over a period of years granted special use permits for the construction and operation of retail gasoline service stations in the City of Crystal under circumstances substantially the same as those under which plaintiff's application for such permit was denied." The court therefore held that "the action of the City Council * * * in denying plaintiff's Application for a special use permit was arbitrary, capricious, unreasonable, discriminatory, confiscatory and void" and "denied plaintiff equal protection under the law in violation of the Constitutions of the State of Minnesota and the United States of America."

The city makes four basic arguments on appeal: (1) That Olsen v. City of Minneapolis, 263 Minn. 1, 115 N. W. (2d) 734, relied on heavily by the trial court, is not in fact controlling; (2) that plaintiff failed at trial to make out a prima facie case of arbitrariness; (3) that even if he had, his case was rebutted by the evidence presented by defendant showing that the denial was based "upon a consideration of the welfare of the neighborhood and the orderly development of the city"; and (4) that the city could not have granted a special-use permit without, in effect, illegally rezoning plaintiff's property.

The trial judge, in holding that the city council acted arbitrarily, relied upon Olsen v. City of Minneapolis, *supra.* Read broadly, that opinion appears to support plaintiff's position that a city council may not deny a special-use permit for a gasoline service station in a commercial zone unless it specifically finds that the station in question would constitute a nuisance. Read this way, Olsen would require an affirmance, since the city council at the time it denied plaintiff's application made no such finding, nor indeed even suggested that the station would constitute a nuisance. We believe, however, that such an interpretation of the Olsen case is unjustified, as it would render special-use-permit provisions of zoning ordinances virtually useless.

Even before the advent of zoning, municipalities had the power to

prevent the construction of nuisances. This power, however, was not enough to permit effective municipal land-use planning.[1] Consequently, zoning ordinances which go far beyond the mere control of nuisances were developed and have long been held to be a legitimate exercise of the police power.[2] Provisions such as the one contained in defendant city's ordinance providing for special-use permits, sometimes called "special exception permits" or "conditional use permits," were introduced into zoning ordinances as flexibility devices. They are designed to meet the problem which arises where certain uses, although generally compatible with the basic use classification of a particular zone, should not be permitted to be located as a matter of right in every area included within the zone because of hazards inherent in the use itself or special problems which its proposed location may present.[3] By this device, certain uses (e. g., gasoline service stations, electric substations, hospitals, schools, churches, country clubs, and the like) which may be considered essentially desirable to the community, but which should not be authorized generally in a particular zone because of considerations such as current and anticipated traffic congestion, population density, noise, effect on adjoining land values, or other considerations involving public health, safety, or general welfare, may be permitted upon a proposed site depending upon the facts and circumstances of the particular case. Unlike a variance provision which permits particular property to be used in a manner forbidden by the ordinance by varying the terms of the ordinance, a special-use provision permits property, within the discretion of the governing body, to be used in a manner expressly authorized by the

---

[1] See, Bettman, *Constitutionality of Zoning*, 37 Harv. L. Rev. 834; Note, 49 Minn. L. Rev. 973, 995.

[2] See, Village of Euclid v. Ambler Realty Co. 272 U. S. 365, 387, 47 S. Ct. 114, 118, 71 L. ed. 303, 310; Beverly Oil Co. v. City of Los Angeles, 40 Cal. (2d) 552, 254 P. (2d) 865.

[3] Kotrich v. County of Du Page, 19 Ill. (2d) 181, 184, 166 N. E. (2d) 601, 603, appeal dismissed, 364 U. S. 475, 81 S. Ct. 243, 5 L. ed. (2d) 221; Tullo v. Millburn Township, 54 N. J. Super. 483, 490, 149 A. (2d) 620, 624; National Maritime Union v. City of Norfolk, 202 Va. 672, 678, 119 S. E. (2d) 307, 311. See, 2 Rathkopf, Zoning and Planning (3 ed.) p. 54-1; Note, 49 Minn. L. Rev. 973, 997.

ordinance.[4] In theory, if not in practice, provisions authorizing the issuance of special-use permits are intended to provide more flexibility in land-use control than provisions authorizing a variance. While the administering body, be it the council itself or a planning commission to which power to act is delegated, has broad discretionary power to deny an application for a special-use permit, it cannot do so arbitrarily. A denial would be arbitrary, for example, if it was established that all of the standards specified by the ordinance[5] as a condition to granting the permit have been met. Where the ordinance does not specify standards, as is usually the case when final authority to determine whether a permit shall be granted is retained by the council, an arbitrary denial may be found by a reviewing court when the evidence presented at the hearing before the municipal governing body and the reviewing court establishes that the requested use is compatible with the basic use authorized within the particular zone and does not endanger the public health or safety or the general welfare of the area affected or the community as a whole.

While our zoning enabling statutes do not expressly confer upon municipalities the power to provide for special-use permits, such power is clearly implicit in Minn. St. 462.357, subd. 1, which provides in part:

"For the purpose of promoting the public health, safety, morals and general welfare, a municipality may by ordinance regulate * * * the uses of land for trade [and] industry * * * and may establish standards and procedures regulating such uses." [6]

Since a special-use-permit provision is an authorized zoning tool designed not merely for nuisance control but to provide municipalities with broad latitude to meet the changing problems of land-use control, it is clear that Olsen v. City of Minneapolis, *supra,* as interpreted by plaintiff,

---

[4] Koch v. Board of County Commrs. 185 Kan. 259, 342 P. (2d) 163; Kline v. Louisville & Jefferson County Bd. etc. (Ky.) 325 S. W. (2d) 324; 2 Rathkopf, Zoning and Planning (3 ed.) pp. 54-3, 54-4.

[5] For an example of an ordinance which provides specific standards which must be met before an administrative body (the Board of Adjustment) can even recommend issuance of a special-use permit, see Minneapolis Zoning Ordinance, art. VI, § 9(f).

[6] See, Kotrich v. County of Du Page, *supra.*

is not dispositive of this case.[7] Under defendant city's special-use provision, the council's power to deny plaintiff's application was not limited merely to resolving the question of whether the service station would constitute a nuisance. It could also have justifiably denied the application if it had determined that the proposed use would endanger the public health and safety and the general welfare of the area affected, and if the factual basis and reasons for that determination at the time the action was taken were expressed in findings, reflected in the council minutes, or otherwise established in judicial proceedings challenging its determination.

Under the ordinance, the council of defendant city retained the power to issue special-use permits. Although an application was required to be passed upon initially by the city planning commission, its decision was a mere recommendation to the city council. Apparently no standards governing the administration of the special-use-permit provision were specified in the ordinance to guide either the planning commission or the council in making particularized case-by-case decisions, nor did the ordinance or our enabling statutes[8] require that either the planning commission or the council, in acting upon an application for a permit, accompany its decision by findings of fact specifying the reason or reasons supporting it.[9]

---

[7] It should be noted, however, that the precise result reached in Olsen was compelled on the single ground that the Minneapolis city council failed to make findings of fact to accompany its denial as then expressly required by statute. Minn. St. 1961, § 462.18.

[8] Cf. Ill. Rev. Stat. c. 24, § 11-13-11, which specifically requires that every variation from the terms of a zoning ordinance granted by a municipality be accompanied by findings of fact specifying the reason or reasons supporting it.

[9] There is considerable authority for the proposition that zoning ordinances should include specific standards governing the exercise of discretionary power by the governing body of a municipality in administering the ordinance, including its special-use-permit provisions. See, e. g., North Bay Village v. Blackwell (Fla.) 88 So. (2d) 524; Gaudet v. Economical Super Market, Inc. 237 La. 1082, 112 So. (2d) 720; Osius v. City of St. Clair Shores, 344 Mich. 693, 75 N. W. (2d) 25, 58 A. L. R. (2d) 1079; 2 Metzenbaum, Zoning (2 ed.) p. 1662; Note, 49 Minn. L. Rev. 973, 1001. Contra,

It is undisputed that in passing upon plaintiff's application neither body preserved any record of the hearing before it, made any findings of fact, or recorded any reason or reasons for its action. When plaintiff established this in his case in chief, the trial court had no choice but to conclude that a prima facie case of arbitrariness had been established. Surely, where nothing more appears than that the council denied the application after a hearing before and upon recommendation of its planning commission, there is no sufficient evidentiary basis for a court to infer that the council's action was reached upon a consideration of the facts and was based upon reason rather than the mere individual whim of the council members. While plaintiff, indeed, has the burden to show arbitrariness,[10] the failure of the council to record any legally sufficient basis for its determination at the time it acted made a prima facie showing of arbitrariness inevitable.

Defendant city, however, argues that this prima facie case was sufficiently rebutted by evidence presented at trial which it claims showed that the denial was based "upon a consideration of the welfare of the neighborhood and the orderly development of the city." However, the trial court did not agree, and we cannot say that its determination was clearly erroneous. The proposed construction plans themselves did not

---

Kotrich v. County of Du Page, *supra*; The Alexander Co. v. City of Owatonna, 222 Minn. 312, 24 N. W. (2d) 244; 4M Club, Inc. v. Andrews, 11 App. Div. (2d) 720, 204 N. Y. S. (2d) 610; 1 Davis, Administrative Law, § 2.09; Goldston and Scheuer, *Zoning of Planned Residential Developments*, 73 Harv. L. Rev. 241, 255. If, however, no standards are provided, a decision of the governing body should, we believe, at least be accompanied by findings of fact specifying the reasoning on which it was based. See, 1 Davis, Administrative Law, § 2.09, p. 110; Note, 49 Minn. L. Rev. 973, 1004. Arguments in favor of imposing such requirements either by statute or judicial decision include: (1) To protect the applicant and the public from arbitrary action; (2) to prevent discrimination; and (3) to facilitate and confine the scope of judicial review. See, 2 Rathkopf, Zoning and Planning (3 ed.) p. 54-52; Note, 49 Minn. L. Rev. 973, 1000.

[10] See, e. g., Jehovah's Witnesses v. Mullen, 214 Ore. 281, 330 P. (2d) 5, 74 A. L. R. (2d) 347, appeal dismissed and certiorari denied, 359 U. S. 436, 79 S. Ct. 940, 3 L. ed. (2d) 932; Marathon Oil Co. v. Welch (Wyo.) 379 P. (2d) 832.

furnish any basis for a denial of the application. They compiled with all of the city's construction restrictions and were compatible with the basic uses of a commercial district. Further, there is no evidence that the construction or the operation of the station would adversely affect property values or the welfare of the neighborhood, or that after construction the city would be without power to regulate the operation of the station. Given these facts, the nebulousness of the contrary testimony, the danger of permitting the council to deny a special-use permit without contemporaneous findings or reasons and then permit its members after several months of thought to present reasons perhaps totally unrelated to the actual reasons for denying the permit, and the discrimination against plaintiff found by the trial court, we cannot accept defendant's contention that plaintiff's prima facie case of arbitrariness was sufficiently rebutted.

Finally, the city argues, as it did even more strongly at trial, that it could not have granted the permit without in effect rezoning the property in violation of the formal procedures necessary for a rezoning. It is clear, however, that plaintiff's property is located in a commercial district, and that a gasoline service station is a permissible use within such a district if a special-use permit is obtained. We fail to see how the issuance of such a permit can constitute rezoning. Clearly, as pointed out above, this argument misconceives the nature and purpose of the special-use-permit device.

Accordingly, we hold that the trial court correctly invalidated the denial of the permit because the action of the council was arbitrary as a matter of law. It was not accompanied by written findings of fact specifying the reason or reasons for the denial, nor was any oral statement of such reasons made by the mayor or any member of the council contemporaneously with the denial, nor was there sufficient evidence presented at trial to compel a finding by the court that the issuance of the permit would adversely affect the public health or safety or general welfare of the community.

Affirmed.