## BOARD OF SUPERVISORS OF BENTON TOWNSHIP AND OTHERS v. CARVER COUNTY BOARD OF COMMISSIONERS AND ANOTHER.

225 N. W. 2d 815.

January 17, 1975—No. 44694.

*Nicklaus & Leatham, Robert A. Nicklaus,* and *Dwight J. Leatham,* for appellants.

*Wurst, Bundlie, Carroll & Crouch, Gerald T. Carroll, Jr., W. R. Glaeser,* County Attorney, and *Scott Ballou,* Assistant County Attorney, for respondents.

Heard before Rogosheske, Todd, and Yetka, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

Appeal from an order of the District Court of Carver County, entered July 25, 1973, denying plaintiffs' motion for a new trial, and from the judgment entered. We affirm.

On June 1, 1971, defendant Carver Creek Country Club, Inc., (hereinafter referred to as Carver Creek) filed an application with the Carver County Office of Planning and Zoning requesting a conditional-use permit for the purpose of constructing a golf course on a 180-acre tract of real estate[1] located in Benton Township, Carver County. This application was referred to the Carver County Planning Commission (hereinafter referred to as the planning commission) for consideration at its July 14, 1971,

---

[1] The SW 1/4 and the S 1/2 of SE 1/4 of NW 1/4, Sec. 1, T. 115, R. 25 W., Carver County. This land was devoted to agricultural use prior to acquisition by Carver Creek Country Club, Inc.

meeting. The Carver County Interim Zoning Ordinance No. 3 was in effect at the time. Section 4 (88) defined conditional uses as follows:

"Those occupations, vocations, skills, arts, businesses, professions, or uses specifically designated in each Zoning Use District, which for their respective conduct, exercise or performance in such designated use districts may require reasonable but special, peculiar, unusual or extraordinary limitations, facilities, plans, structures, thoroughfares, conditions, modification, or regulations in such use district for the promotion or preservation of the general public welfare, health, convenience, or safety therein and in the County, and therefore, may be permitted in such use district only by a Conditional Use Permit."

Section 6, subsection 7, details the procedure to be used in obtaining a conditional-use permit:

"7.1—APPLICATION: Whenever this Ordinance requires a Conditional Use Permit, an application therefor in writing may be filed with the Zoning Administrator together with such filing fee as may be established by the County Board and shall be accompanied with a site plan and such information and showing as may be necessary or desirable, including but not limited to the following:

"a.   Site plan drawn at scale showing dimensions.

\* \* \* \* \*

"h.   Sanitary sewer and water plan with estimated use per day.

\* \* \* \* \*

"7.2—REFERRAL TO COMMISSION: The application and related file shall be referred to the Commission for study concerning the effect of the proposed use on the Comprehensive Plan and on the character and development of the neighborhood. The Commission shall place the application on its agenda for its next regular meeting after seven (7) days from the date of filing. The Commission shall transmit its findings and recommendations to the

County Board within seventy (70) days from the date of filing the application.

"7.3—COUNTY BOARD ACTION: The County Board shall consider the advice and recommendation of the Commission and the effects of the proposed use upon the health, safety and welfare of Carver County and of the occupants of the immediate neighborhood. Should the County Board find that the proposed use when conducted under the specified conditions will not be detrimental to the health, safety, or general welfare, they may grant a Conditional Use Permit specifying the conditions for location and use requested."

Section 8 provides for the uses in agricultural districts:

"(1)—PERMITTED PRINCIPAL USES: Within any 'A' District no structure or land shall be used except for one or more of the following uses:

\* \* \* \* \*

"1.3—Agriculture subject to two (2) animal units per acre.

"(2)—CONDITIONAL USES: Within any 'A' District no structure or land shall be used for the following uses except by Conditional Use Permit:

\* \* \* \* \*

"2.4—Recreational uses or facilities designed therefore to serve more than one family, including, but not limited to, golf courses, country clubs, tennis courts, swimming pools, archery ranges and rifle or trap shooting ranges."

The Carver Creek application was considered by the planning commission at public meetings held July 14 and August 11, 1971, at which time the proponents and opponents, including the parties and their counsel, expressed their views on the matter. At the conclusion of the second meeting, the planning commission voted to deny the Carver Creek application. Both meetings were recorded on tape and later transcribed into typed summaries.

These summaries (or minutes) did not recite the reasons for

the planning commission's denial of the application. Aside from the minutes of the August 11 meeting, record of the commission's denial is found only in a notation on the application form.

The planning commission did not forward recommendations to the board of county commissioners (hereinafter referred to as the board), other than a bare notation of its negative vote on defendant's application.[2] However, there is testimony from which the trial court could find that the minutes and other documents compiled by the planning commission were forwarded to the board. The board considered the application at four separate meetings, held on September 14, October 12, October 26, and November 9, 1971.

Final action was taken by the board on November 9 after considering a report by a committee consisting of the county attorney and two county commissioners appointed at the October 26 meeting. The application was approved by a 3 to 2 vote of the county board.

Thereafter, plaintiffs, including the Board of Supervisors of Benton Township and several interested property owners, brought an action in district court against Carver Creek and the county board to determine the validity of the conditional-use permit.

The trial court, sitting without a jury, upheld the board's approval of the Carver Creek application and found:

"That the Carver County Board of Commissioners, after hearings, determined that a golf course was not detrimental to the health, safety or welfare of the residents of Carver County, or of the immediate neighborhood in which the golf course was to be located, and approved the issuance of a conditional use permit to Carver Creek Country Club, Inc., and prescribed the conditions to apply to such permit."

---

[2] Carver County Interim Ordinance No. 3, § 6, subsection 7.2, required the planning commission to transmit its findings and recommendations to the county board within 70 days from the date of the filing of the application. A fair reading of this provision prompts the conclusion that it was not followed.

Appeal was then taken to this court. Plaintiffs raise the following issues:

(1) Whether the board's decision was arbitrary as a matter of law because it was neither based on a sufficient record nor accompanied by findings or reasons in support thereof.

(2) Whether the board acted arbitrarily by failing to consider the recommendation of the planning commission.

(3) Whether the board arbitrarily delegated its authority by forming a subcommittee composed of two board members and the county attorney to investigate the Carver Creek application and report the results to the board.

(4) Whether the board acted arbitrarily by failing to consider the impact of the proposed use on the comprehensive plan of the county.

1. It is clear that the board neither accompanied its decision by findings of fact, nor did the board preserve a record of its deliberations vis a vis the application at issue. Thus, under Zylka v. City of Crystal, 283 Minn. 192, 167 N. W. 2d 45 (1969), a prima facie case of arbitrariness was established. However, the record shows that the board had before it ample evidence that Carver Creek's proposed use would not endanger the health, safety, or welfare of the community.[3] This evidence was more

---

[3] Plaintiffs have listed a number of factors in their brief which allegedly show that approval of the Carver Creek application will be detrimental to their health, safety, and welfare. These factors are not persuasive when compared to the conditions attached to the granting of the conditional-use permit by the board.

The board's conditions are as follows:

"1. That the driveway to T.H. #284 be placed at the high location indicated by applicant at the Board meeting on November 9, 1971 and that the driveway be built up to the highway level.

"2. That the drains to and from said tract of land remain at least as effective as they now are, and that nothing be done on said land to adversely affect the flow of surface water from adjoining land.

"3. That the 16 inch capacity well proposed for the irrigation system on the golf course be finished to the Mt. Simon Sedimentary Rock as

than sufficient to rebut the prima facie case of arbitrariness, thereby allowing the trial court to uphold the board's decision.

Moreover, since zoning laws are a restriction on the use of private property, we hold that there is a heavier burden required on the part of those who challenge the *approval* of a conditional-use permit, as compared to the degree of proof required of a landowner whose application is denied.

Plaintiffs rely on Chandler v. Kroiss, 291 Minn. 196, 190 N. W. 2d 472 (1971), which is the only case in which this court has previously considered a challenge to the *approval* of a conditional-use permit. That case, however, did not hold that failure of a local unit of government to make contemporaneous findings or to preserve a record does not render the decision of that body

proposed in the report of Bergerson-Caswell, Inc. dated July 6, 1971.

"4. That no license be applied for or issued to sell intoxicating liquor on the premises.

"5. That the proposed lagoon on the East side of the golf course be maintained as a wildlife habitat area.

"6. That the applicant submit a plan for fencing the area and have said plan approved by the County Board before construction commences.

"7. That all necessary building permits required by local authority be obtained prior to commencing construction.

"8. That no construction commence until:

a. Applicant has filed with the County Board detailed plans and specifications for all of the work to be performed on said land.

b. Applicant has also filed copies of valid contracts with capable contractors for the performance of all such work, said contracts to be accompanied by standard performance bonds.

c. Applicant has filed a budget showing the method of financing the costs of said contracts.

d. At least 50% of the total costs of said contracts has been deposited in an escrow account to be verified by the bank.

"9. That no substantial change shall be made in any plan, specification or contract without prior approval of the County Board.

"10. That no buildings be erected or dimensions altered if the cost thereof exceeds $5,000.00 until the golf course is complete and operating."

*per se* invalid. Rather, as in the instant case, a reviewing court may look to the evidence in the record, and, absent a showing that the proposed use would be detrimental to public health, safety, or welfare, then the governmental decision must be upheld.

2. Plaintiffs suggest a dangerous precedent in urging this court to hold that it is arbitrary for the board to fail to consider the recommendation of the planning commission. In Zylka, we stated:

"Under the ordinance, the council of defendant city retained the power to issue special-use permits. Although an application was required to be passed upon initially by the city planning commission, its decision was *a mere recommendation* to the city council. * * *" (Italics supplied.) 283 Minn. 197, 167 N. W. 2d 50.

The relevant ordinance provision, § 6, subsection 7.3, clearly vests the final authority to reject or to approve applications with the board, not the planning commission.

The record does not show that the board did not consider the evidence compiled by the planning commission. Rather, the minutes of the planning commission and evidence gathered in those proceedings were placed before the board. There is testimony that the board was made aware of certain objections to the application which had been presented to the planning commission. As in Chandler, a board member was present at the planning commission hearings. Although not reflected in the board minutes, there was testimony presented at trial that the board had discussed the planning commission minutes and received evidence considered by the planning commission. There is also a letter in evidence to the board from the county attorney, dated October 15, 1971, in which the board was advised to review the entire planning commission file.

The issue at hand arises from the board's failure to acknowledge in its minutes due consideration of the planning commission file. However, this error of omission, in light of the above evi-

dence, does not appear to constitute grounds for reversal by this court.

3. The fatal flaw in plaintiffs' third assignment of error is simply this—the board, at its October 26, 1971, meeting, appointed a subcommittee to review potential conditions and to report to the board. There was no delegation of the power to make the final determination of the application. Rather, the appointment of the subcommittee was to provide information.

4. Plaintiffs urge this court to strike down the decision of the board on grounds that it failed to consider the effects of the application upon the comprehensive development plan.[4]

Plaintiffs cite Chandler v. Kroiss, *supra*, in support of their contention that this court should refuse to allow government bodies to ignore comprehensive plans. This reliance on Chandler is misplaced. In that case the granting of the special-use permit, which was contra to the comprehensive plan, automatically amended the plan under the relevant ordinances. In short, Chandler did not hold that failure to act in conformity with a comprehensive plan is arbitrary *per se*.

Plaintiffs proceed on the erroneous assumption that the board's decision was contra to, and reached without consideration of, the comprehensive plan. The board had in its files a memorandum written by a planning expert, Mr. James W. Hawks, hired by Carver County to assist in the formulation of land use plans and zoning provisions. In this memorandum, Mr. Hawks made specific reference to the comprehensive plan, and stated his opinion that the Carver Creek application was *not* necessarily contra to the goals espoused therein.

While we are persuaded the record is sufficient to affirm the decision of the lower court upholding the board's approval of defendant's application, we once again urge our local governments to follow the guidelines set forth in Zylka. Not only does such

---

[4] This plan was adopted by the board on May 25, 1971, less than one week prior to the date of the Carver Creek application.

adherence simplify the process of judicial review, but also, and most importantly, the quality of decisions regarding conditional-use permits will thereby be improved.

Affirmed.