UNIPROP MANUFACTURED HOUS-
ING, INC., f/k/a Ardmor Associ-
ates, Appellant,

v.

CITY OF LAKEVILLE,
et al., Respondents.

No. CX–91–602.

Court of Appeals of Minnesota.

Aug. 13, 1991.

Review Denied Oct. 11, 1991.

John F. Bonner, III, Bonner Law Offices, Minnetonka, for appellant.

Roger N. Knutson, Campbell, Knutson, Scott & Fuchs, P.A., Eagan, for respondents.

Considered and decided by CRIPPEN, P.J., and SHORT and LOMMEN *, JJ.

## OPINION

SHORT, Judge.

Uniprop Manufactured Housing, Inc., seeks review of a city council's decision rejecting its severe weather evacuation plan and requiring construction of a storm shelter at its mobile home park. Uniprop argues the trial court erred in affirming the council's action because (1) there was no rational basis for the city council's decision, and (2) the expert's testimony and written report were improperly received into evidence. We disagree and affirm.

---

* Acting as judge of the Court of Appeals pursuant to Minn. Const. art. VI, § 2.

## FACTS

Uniprop is a Michigan corporation which owns the Ardmor Mobile Home Park. The Park is located in the southeast corner of Lakeville, near the city's border with Farmington. It has approximately 339 mobile homes and a population of about 800–850 residents. The Park's original weather emergency plan called for evacuation to a church across the street from the Park. In 1987, the Lakeville building inspector notified the Park that the nearby church was an inappropriate shelter because of windows in the basement, and the Park changed its evacuation plan. Under the new plan, residents were to evacuate the Park during severe weather and drive to a church in downtown Lakeville. The downtown church is listed as a storm shelter in Lakeville's emergency operation plan.

Uniprop sought approval of its evacuation plan at a meeting of the Lakeville City Council in September of 1988. The city council rejected the evacuation plan and passed a motion ordering Uniprop to build storm shelters at the Park or face legal action. The city council made no written findings of fact to support its decision. However, the minutes of the city council meeting show the grounds for the council's decision were its "concerns over the lack of any satisfactory evacuation option, considering the location of the mobile home park, available exits and highways, and distance to suitable buildings of sufficient design to serve as a storm shelter."

In preparation for this litigation, the city obtained the services of Strgar–Roscoe–Fausch, Inc. (SRF), a firm of consulting engineers. SRF prepared a written report following its review of Uniprop's emergency evacuation plan. The report states it would take approximately one hour to evacuate the Park. Due to the limited advance warning associated with tornados and severe storms, SRF reasoned that evacuation of the Park should be completed in less than 20 minutes. Even with traffic control at the trouble spots along the evacuation route, SRF surmised that the evacuation would take well in excess of 30 minutes. SRF concluded Uniprop's evacuation plan was not acceptable because of poor traffic operations, limited highway capacity, and general evacuation planning principles. Park residents would have to travel one and one-half miles to the church, along a route which would take them directly into the predicted path of a tornado. The trial court overruled Uniprop's objections to introduction of both the SRF report and the testimony of an engineer who helped prepare the report.

## ISSUES

I. Did the Lakeville City Council reject Uniprop's emergency evacuation plan arbitrarily, capriciously, or without a rational basis?

II. Did the trial court commit reversible error in admitting the expert testimony of a consulting engineer and the engineer's written report?

## ANALYSIS

 The city council's decision regarding Uniprop's evacuation plan was a quasi-judicial determination because the council applied statutory standards and local considerations to the facts of an individual case. *See Honn v. City of Coon Rapids,* 313 N.W.2d 409, 417 (Minn.1981). As a quasi-judicial determination, this court on review must make an independent examination of the city council's record and decision, without giving any special deference to the same review conducted by the trial court. *See id.* at 415. The standard of review is whether the city council had a reasonable basis for its decision or whether the decision was unreasonable, arbitrary, or capricious. *See id.* at 416–17.

 Our review focuses on the legal sufficiency and factual basis for the reasons the city council gave for its decision. *See Swanson v. City of Bloomington,* 421 N.W.2d 307, 311 (Minn.1988). When the record on review is augmented by new evidence received at trial, this court conducts an independent review of the record as augmented. *St. Croix Dev., Inc. v. City of Apple Valley,* 446 N.W.2d 392, 397 (Minn.App.1989), *pet. for rev. denied* (Minn. Dec. 1, 1989). We set aside routine

municipal decisions only in those rare cases when the city council's decision has no rational basis. *White Bear Docking and Storage, Inc. v. City of White Bear Lake,* 324 N.W.2d 174, 176 (Minn.1982); *see also Swanson,* 421 N.W.2d at 311.

### I.

In 1987, the Minnesota legislature amended the severe weather safety provisions concerning residents of manufactured home parks. *See* 1987 Minn.Laws ch. 195, § 1.[1] Under the new law,

A manufactured home park with ten or more manufactured homes, licensed prior to March 1, 1988, shall provide a safe place of shelter for park residents or a plan for the evacuation of park residents to a safe place of shelter within a reasonable distance of the park for use by park residents in times of severe weather, including tornadoes and high winds. The shelter or evacuation plan must be approved by the municipality by March 1, 1989. The municipality may require the park owner to construct a shelter if it determines that a safe place of shelter is not available within a reasonable distance from the park.

Minn.Stat. § 327.20, subd. 1(7) (1988).[2] It is undisputed that Uniprop is subject to the requirements of the statute.

Uniprop argues the city council's rejection of the evacuation plan was arbitrary, capricious, and lacked a rational basis. The party challenging the city council's action has the burden of showing arbitrariness, but that party may establish a prima facie case of arbitrariness when the city council fails to record any legally sufficient basis for its determination at the time it acted. *Zylka v. City of Crystal,* 283 Minn. 192, 198, 167 N.W.2d 45, 50 (1969). In some cases, the presumption of arbitrariness can be overcome by evidence adduced at trial displaying a rational basis for the city council's decision. *See Kehr v. City of Roseville,* 426 N.W.2d 233, 236

(Minn.App.1988), *pet. for rev. denied* (Minn. Sept. 16, 1988). At a minimum, however, a municipal body must have the reasons for its decision recorded or reduced to writing and in more than just a conclusory fashion. *Honn,* 313 N.W.2d at 416; *see also White Bear Rod and Gun Club v. City of Hugo,* 388 N.W.2d 739, 742 (Minn. 1986).

In this case, the city council did not make a complete record of its proceedings and made no findings of fact. The minutes of the city council meeting show that the council believed there was no satisfactory option for evacuation from Uniprop's mobile home park because of (a) the Park's location, (b) available exits and highways, and (c) the distance to suitable buildings of sufficient design to serve as a storm shelter. These reasons are somewhat conclusory and offer little assistance in facilitating judicial review. However, we do not expect city councils to make detailed studies, or make entirely complete records of their proceedings. *See Honn,* 313 N.W.2d at 415–16. In a relatively small community such as Lakeville, city officials need not conduct a study to measure the effectiveness of an evacuation plan; rather, they may rely on their general knowledge of the area. *See White Bear Docking,* 324 N.W.2d at 177; *Parranto Bros., Inc. v. City of New Brighton,* 425 N.W.2d 585, 590 (Minn.App.1988), *pet. for rev. denied* (Minn. July 28, 1988).

The council members knew, for example, where the Park was located and what route the residents would have to take in following the evacuation plan. They were aware of the single exit from the Park, the highways onto which the residents would have to turn, and they had a general idea of traffic levels along the evacuation route. They also knew which buildings might be suitable to serve as storm shelters. Nonetheless, the lack of written evidence justifying the city coun-

---

1. The effective date of the statutory changes was March 1, 1989. 1987 Minn.Laws ch. 195, § 4.

2. Manufactured home parks with ten or more manufactured homes, receiving a primary license after March 1, 1988, do not have the option of establishing an evacuation plan; they must provide a safe place of shelter. Minn.Stat. § 327.20, subd. 1(8) (1988).

cil's conclusions makes their decision presumptively arbitrary.[3]

When the record of a municipal proceeding is not clear and complete, the parties are entitled to an opportunity to augment the record in district court. *Swanson*, 421 N.W.2d at 313. The court may receive new or additional evidence at trial, but the evidence must be relevant to the substantive issues raised and considered by the municipal body. *Honn*, 313 N.W.2d at 416. The court must strive to prevent the municipal body from offering after-the-fact justifications for its decision which are totally unrelated to the actual reasons for the initial decision. *See Metro 500, Inc. v. City of Brooklyn Park*, 297 Minn. 294, 300, 211 N.W.2d 358, 362 (1973).

The basic consideration is whether the city had a rational basis for concluding Uniprop's evacuation plan did not provide a safe place of shelter within a reasonable distance from the Park. At trial, the court allowed a traffic expert from SRF to testify as to the emergency route and evacuation plan submitted by Uniprop. It also received in evidence SRF's written report. The study concluded Uniprop's evacuation plan was not acceptable based on potential traffic problems, the unsatisfactory route to the shelter, and the length of time it would take to evacuate the Park. While the report contains matters not mentioned in the city council minutes, it does address issues raised and considered by the council. Common sense, buttressed by the expert testimony and report, demonstrates it was reasonable for the city council to reject an evacuation plan requiring over 800 people to get in their cars and drive a mile and one-half under the threat of an approaching tornado.

Uniprop argues its evacuation plan has worked in the past and that only about 35 of its residents respond to storm warnings. However, it was reasonable for the city council to consider a route and shelter suitable for all residents of the mobile home park. When viewed in this light, the rational basis for the city council's decision is clear.

## II.

We will reverse a ruling on admissibility of evidence only if the trial court abused its discretion and the ruling prejudiced the objecting party. *May v. Strecker*, 453 N.W.2d 549, 554 (Minn.App.1990), *pet. for rev. denied* (Minn. June 15, 1990). Uniprop argues the trial court erred in admitting the expert testimony of a traffic consultant and the SRF report because (1) this evidence was not relevant to the issues raised and considered by the city council, (2) the report contained inadmissible hearsay, and (3) the expert's testimony and his report were based on false assumptions. We disagree.

First, the issue before the city council was whether Uniprop's plan was a satisfactory evacuation option for the Park residents. *See* Minn.Stat. § 327.20, subd. 1(7) (an evacuation plan must provide a safe place of shelter within a reasonable distance from the Park). The expert's testimony and report bear directly on the issue before the council. That evidence differs from the minutes of the city council meeting only in the level of detail in which it analyzes Uniprop's evacuation plan. Therefore, the report and the accompanying testimony were relevant to the issues raised and considered by the city council.

Second, the hearsay statements contained in the SRF report were admissible at trial. The trial court did not abuse its discretion in admitting the underlying expert data for the purpose of showing the basis of the expert's opinion. *See* Minn. R.Evid. 703(b). There was good cause to admit the underlying data, and the data appears to be particularly trustworthy as much of it can be confirmed without resort to information outside one's everyday experience. Some of the hearsay information contained in the SRF report was admissible because it was extracted from reports of

---

3. Although a lack of findings shifts the burden to the city council, it does not change the rational basis standard. *Kehr*, 426 N.W.2d at 236.

government agencies with a duty to observe and report severe weather phenomena. *See* Minn.R.Evid. 803(8). The rest of the hearsay was admissible because it was based on trustworthy and reliable commercial publications. *See* Minn.R.Evid. 803(17). Any error in admitting the report was not reversible because even without the hearsay statements, the expert's testimony and the remainder of the report provide ample support for the city council's decision. *See* Minn.R.Evid. 103(a).

 Third, the expert's testimony and the SRF report were not based on false assumptions. *Cf. MCC Invs. v. Crystal Properties,* 451 N.W.2d 243, 247 (Minn. App.1990) (an expert's opinion cannot be based on speculation and conjecture), *pet. for rev. denied* (Minn. Mar. 27, 1990). SRF properly estimated the maximum number of residents who would use the evacuation plan in a severe storm, rather than basing its study on the small number of residents who had used the evacuation plan in the past, because the city council must consider a safe place of shelter for all the residents. Further, the report did not contradict the testimony that it would take under five minutes to drive from the Park to the proposed place of shelter. That estimate was the length of time it would take one car to drive along the evacuation route, not the time it would take to completely evacuate the Park. Finally, the report adequately dealt with potential traffic delays exiting the Park. It explicitly considered the possibility of traffic control and supervision at trouble spots along the evacuation route. Consequently, the facts and assumptions underlying the expert's opinion were neither unreliable nor unsound.

## DECISION

The Lakeville City Council had a rational basis for rejecting Uniprop's emergency evacuation plan, as demonstrated by the city council minutes and the SRF report. Further, the trial court did not abuse its discretion in allowing the city to augment the record with the expert's report and testimony.

Affirmed.