**EARTHBURNERS, INC., Respondent,**

v.

**COUNTY OF CARLTON, Appellant.**

**No. C5–93–110.**

Court of Appeals of Minnesota.

July 27, 1993.

Review Granted Sept. 21, 1993.

---

Robert C. Maki, Maki & Overom, Chtd., Duluth, for respondent.

Marvin E. Ketola, Carlton County Atty., James M. Ross, Jr., Asst. County Atty., Carlton, for appellant.

Considered and decided by LANSING, P.J., and CRIPPEN and HOLTAN,* JJ.

## OPINION

CRIPPEN, Judge.

This appeal raises a question not previously decided, respecting judicial review of the county's quasi-judicial decision to deny a special use permit. Appellant contends that the trial court erred by employing a summary judgment to direct issuance of the permit. We affirm.

## FACTS

Early in 1992, respondent Earthburners, Inc. applied to Carlton County for a permit to operate a portable so-called soil roaster on a 300–acre site where a gravel pit is now operated. The soil roaster device is employed to cleanse petroleum-contaminated soils. The parties agree that this operation at the proposed site constitutes a conditional use under the Carlton County Zoning Ordinance. The ordinance provides procedures and standards governing issuance of conditional use permits.[1]

*Staff Recommendation; Commission Hearing*

After reviewing Earthburners' application, the Carlton County Planning and Zoning Administrator recommended issuing the permit, with conditions that include the demand for compliance with all Minnesota Pollution Control Agency rules regarding petroleum-contaminated soil. The county planning commission conducted a public hearing on the application in February 1992, and minutes of its hearing constitute its only report to the county board.[2] Two county commissioners attended the hearing. The minutes show approval of a motion to recommend denial of the request "based on the testimony in opposition to the proposal."

The commission hearing minutes contain no other findings or statements by members on reasons for denying the application. They include notes on a variety of citizen concerns, questioning whether respondent's operations would produce fumes, water pollution, truck traffic or a decline in the value of adjacent property. Appellant points out letters presented to the commission, authored by Dr. Andrew R. McFarland, a neighbor to the proposed Earthburners operation and an engineer

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. The ordinance establishes that the county planning commission shall report in writing to the board of county commissioners its findings and decisions regarding applications for conditional use permits. The commission is not to approve conditional uses unless it finds:

    1. That the conditional use will not be injurious to the use and enjoyment of the other property in the immediate vicinity for the purpose already permitted, nor substantially diminish and impair property values in the immediate vicinity.

    2. That the establishment of the conditional use will not impede the normal and orderly development and improvement of the surrounding vacant property for uses predominant in the area.

    3. That adequate utilities, access roads, drainage and other necessary facilities have been or are being provided.

    4. That adequate measures have been or will be taken to provide sufficient off street parking and loading space to serve the proposed use.

    5. That adequate measures have been or will be taken to prevent or control offensive odor, fumes, dust, noise and vibration so that none of these will constitute a nuisance, and to control lighted signs and other lights in such a manner that no disturbance to neighboring properties will result. Carlton County, Minn., Ordinance No. 6, § 20, subd. 4 (1978).

2. Under the county ordinance, the commission "shall report in writing to the Board of County Commissioners its findings and decisions. Carlton County, Minn., Ordinance No. 6, § 20, subd. 3(1) (1978). The duty of the commission is to make recommendations to the county board, and the board alone is empowered to decide whether an application should be approved or denied. *Id.*, § 20, subd. 1(1) (1978).

with expert knowledge on air emissions. In his letters, Dr. McFarland states concerns common to other area residents, asking that several issues be explored, and he asks that state Pollution Control Agency testing and monitoring be expanded to cover potential contaminants other than fuel and potential air pollution from contaminated soils that are temporarily stockpiled before being treated. In addition, McFarland states that respondent's soil cleansing operation would constitute a nuisance, and he states a warning, generally, on the long term effects of a damaging waste operation. But these general remarks are backed by a plea for effective monitoring, and a statement of topics of concern, not by an expert opinion on predictable damage. Appearing through counsel, both at the commission hearing and the county board hearing, respondent presented materials addressing concerns stated by others.

*County Board Proceedings*

One week after the planning commission hearing, the Earthburners' application came before the county board of commissioners. Announcing that the county board would not hold a hearing, the board chair asked that there be a five-minute presentation on each side of the question. Following short presentations and a brief discussion, the board passed a motion to accept the planning commission recommendation. The chair subsequently signed an order denying the application

> upon the following conditions or reasons: Deny based on public testimony presented in opposition.

While discussing the application, county board members did not speak to ordinance standards on conditional use permits, or any reasons for denial premised on those standards. One commissioner expressed the sentiment that respondent should have spent time explaining its project to residents. The same commissioner observed that the board would not be able to live with the proposal until "the people who are affected feel that they can live with this."

The county board chair observed that the proposal was "much more complex than we have the time to give it," and he recommended accepting the commission recommendation "and as we get smarter down the line and become more educated [there] might be, [a] little bit later on, [a] better opportunity for Earthburners or whoever to reapply for a permit." Other members agreed. One member advised that respondent might consider another site where residents would be more supportive.

*Trial Court Review*

Following the board denial, respondent brought suit against the county, seeking a declaration that its application had been arbitrarily denied and asking for an order compelling the county to permit its proposed use, subject to conditions first prescribed by the county zoning administrator. Claiming that the record showed no genuine issue as to any material fact, respondent subsequently moved for summary judgment. Minn.R.Civ.P. 56.03 (summary judgment appropriate where party shows "no genuine issue as to any material fact and [adverse party] is entitled to a judgment as a matter of law"). Following a hearing, the trial court granted the motion.

The trial court concluded from the record that respondent furnished sufficient evidence to the county to support approval of its application, and that the county failed to show a lawful basis for its denial. In its attached memorandum, the trial court made these observations:

a. Because the county ordinance declared that the soil treatment operation was a conditional use at the place proposed, the substantive issue of the case was confined to use conditions stated in the ordinance. But the county board failed to consider conditions dictated by its ordinance. Although the county received evidence of potential problems connected with the proposed operation, it made no findings that any of these concerns were legitimate. Competent, professional staff were available to assist the county in stating any lawful basis under the ordinance for its decision.

b. The county board proceeded as it did after its similar process had been declared unfair in *City of Barnum v. County of*

*Carlton,* 386 N.W.2d 770, 776 (Minn.App. 1986), *pet for rev. granted* (Minn. July 16, 1986), *on remand,* 394 N.W.2d 246 (Minn. App.1986).

c. The single reason expressed by the county, its concern about local opposition, was an invalid ground for denial as a matter of law. *Scott County Lumber Co. v. City of Shakopee,* 417 N.W.2d 721, 728 (Minn.App.1988), *pet. for rev. denied* (Minn., March 23, 1988).

d. Permitting the county to determine reasons for its action after the fact would permit them to "merely rationalize their previous decision." *Barnum,* 386 N.W.2d at 776.

e. Where the county declined to identify reasons for denial of Earthburners' application, the court could not explore evidence in the case to determine if grounds for denial were reasonable.

### ISSUE

Having stated or discussed no legitimate reasons to deny respondent's special use application, is the county permitted an opportunity in judicial review proceedings to identify a rationale for its action and produce relevant evidence?

### ANALYSIS

*Standards of Trial Court Action and Appellate Review*

■ The reviewing court is to undertake an independent examination of the issues in a zoning case, without giving special deference to the same review conducted by the trial court. *Honn v. City of Coon Rapids,* 313 N.W.2d 409, 415 (Minn. 1981). A zoning decision is to be upheld if it is reasonable. *VanLandschoot v. City of Mendota Heights,* 336 N.W.2d 503, 508 (Minn.1983). The standard of reasonableness can be stated in terms of what is not arbitrary or capricious. *Honn,* 313 N.W.2d at 417.

■ Reasonableness is measured by examining whether the standards in the applicable ordinance have been satisfied. *White Bear Docking & Storage, Inc. v. City of*

*White Bear Lake,* 324 N.W.2d 174, 176 (Minn.1982). Where a zoning ordinance specifies standards which must be applied in determining whether to grant a special use permit, and the applicant fully complies with the specific standards, a denial of the permit is arbitrary as a matter of law. *Hay v. Township of Grow,* 296 Minn. 1, 5, 206 N.W.2d 19, 22 (1973); *Scott County Lumber,* 417 N.W.2d at 727.

■ Court authority is to be invoked "sparingly" in zoning cases, showing regard for broad discretion of municipal officials. *White Bear Docking & Storage, Inc.,* 324 N.W.2d at 175. But two other supreme court statements on the standard of review are also applicable in this case:

a. Although the formal review standard is the same, when the zoning authority considers a special use permit and acts in a quasi-judicial capacity, it is subject to more extensive judicial oversight than when it acts in a legislative capacity, making zoning or rezoning decisions. *Honn,* 313 N.W.2d at 416–17; *Barnum,* 386 N.W.2d at 775.

b. Since zoning laws are a restriction on the use of private property, the burden of proof to show arbitrariness is lighter for landowners challenging denial of a special use permit than for objectors questioning approval of a permit. *Board of Supervisors v. Carver County Bd. of Comm'rs,* 302 Minn. 493, 499, 225 N.W.2d 815, 819 (1975). We consider this holding mindful that summary judgment in zoning review proceedings may be ordered against landowners, preventing them from adding anything to the record developed before the municipal body, where the council in its proceedings stated lawful reasons to deny the landowners' petition and created an adequate record supporting its stated rationale. *Swanson v. City of Bloomington,* 421 N.W.2d 307, 314 (Minn.1988).

■ The county board in this case did not consider lawful reasons to deny respondent's petition, and minutes the county produced include no evidence specifically tending to show that respondent was not entitled to a permit under the Carlton County

zoning ordinance. Thus, the trial court's summary judgment involved no assessment of conflicting evidence on material fact issues. The reviewing court in this instance is to determine whether the trial court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988).

### Minutes of County Meetings

Our analysis is premised on an underlying conclusion, after examining planning commission and county board minutes, that the county board engaged in no discussion on any legitimate reason for the decision to deny respondent's application. The board failed to exercise its discretion in deciding the merit of any prospective, lawful reason for denial.

In addition, their minutes demonstrate that the commission and the board assembled information merely speculating on possible hazards and expressing concern that these be investigated by the boards. Dr. McFarland, asking that respondent's application be denied and that several issues be investigated, tempered his ultimate scientific conclusions by advising that the state pollution control agency should expand the number of factors it has considered respecting soil cleansing operations.

■ Ultimately, only one consideration is indicated by the record. Both the planning commission and the board stated that they denied the application because of "public testimony presented in opposition." As the trial court concluded, community opposition to a desired use is legally insufficient as the sole reason for denying a special use permit. *Swanson*, 421 N.W.2d at 313 (neighborhood opposition may not constitute sole basis for zoning decision). *Chanhassen Estates Residents Assoc. v. City of Chanhassen*, 342 N.W.2d 335, 340 (Minn. 1984) (denial of conditional use must be based on something more concrete than neighborhood opposition and expressions of concern for public safety and welfare).

### Record of Reasons; The Supreme Court Mandate

■ In *Honn*, the supreme court prescribed proper procedures for review of municipal zoning decisions. *Honn*, 313 N.W.2d at 416. In its declaration of procedures, the court instructed municipal councils and boards that, while they "need not necessarily prepare formal findings of fact, "[they] must, at a minimum, have the reasons for [their] decision recorded or reduced to writing and in more than just a conclusory fashion." The court warned that if a municipal body fails to do so, "it runs the risk of not having its decision sustained." *Id.* Complementing this instruction, the court provided that any new evidence produced in trial proceedings "must be relevant to the issues that were raised and considered before the municipal body." *Id.*

■ In earlier decisions, the supreme court had established one risk undertaken by municipalities when making a zoning decision without stating reasons for the action. Where the governing body denies a special use permit without making findings or otherwise recording a reason or reasons for its action, the trial court must recognize that a prima facie case of arbitrariness has been established. *Zylka v. City of Crystal*, 283 Minn. 192, 198, 167 N.W.2d 45, 50 (1969). Moreover, in determining whether the city can overcome this showing of arbitrariness, the courts will consider

> the danger of permitting the council to deny a special-use permit without contemporaneous findings or reasons and then permit its members after several months of thought to present reasons perhaps totally unrelated to the actual reasons for denying the permit.

*Id.*, 283 Minn. at 199, 167 N.W.2d at 51.

### Rebuttal by Municipality; Right to Trial

In *Zylka*, where lower court proceedings occurred before any appellate court statement on the prima facie implications of unexplained municipal actions, the trial court had conducted an evidentiary hearing to reach its final decision in the case. The city's right to a trial was not at issue. In *Honn*, the court observed the right of trial

in its general statement of procedures for review, but the case was decided and the court's procedural prescriptions were stated without addressing the consequences of municipal decisions where the governing body neither states nor discusses reasons, conclusory or otherwise.[3]

Prior to its decision in *Honn*, the supreme court recognized that a prima facie case of arbitrariness may be rebutted by evidence supporting a municipal decision to grant a special use permit. *Carver County*, 225 N.W.2d at 819. In the *Carver County* case, as in *Zylka*, a trial proceeding had occurred before appellate review, and the right to a trial was not at issue. *See also Uniprop Manufactured Hous., Inc. v. City of Lakeville*, 474 N.W.2d 375, 378 (Minn.App.1991) (dicta on rebuttal at trial in case where findings were neglected by the city council but where minutes showed three critical conclusions of the council relevant to its decision), *pet. for rev. denied* (Minn. Oct. 11, 1991).

■■■ In contrast with implications of *Carver County* and *Zylka*, the supreme court has found reversible error in a trial court holding that sustains a zoning decision on grounds other than those identified in the municipal process. *Inland Constr. Co. v. City of Bloomington*, 292 Minn. 374, 195 N.W.2d 558 (1972); *Metro 500, Inc. v. City of Brooklyn Park*, 297 Minn. 294, 211 N.W.2d 358 (1973); *see also Corwine v. Crow Wing County*, 309 Minn. 345, 244 N.W.2d 482 (1976) (denying summary judgment for landowner, but singularly because the county showed a genuine issue on one of two grounds stated for its decision).

In sum, no appellate decision has squarely faced the question of whether the municipality has a right to establish its case in trial proceedings when it has failed to discuss or to state reasons for its zoning decision. But we recognize the weight of dicta in *Swanson v. City of Bloomington*, where the supreme court approved a summary judgment in favor of a well-documented municipal decision to deny approval of a proposed plat:

> Where the municipal proceeding has not been fair or the record of that proceeding is not clear and complete, *Honn* applies and the parties are entitled to a trial or an opportunity to augment the record in district court. The meaningful review to which parties are entitled requires no less.

*Swanson*, 421 N.W.2d at 313.

### Summary Judgment

We conclude that a summary judgment for the landowner applicant was appropriate where the county board failed to exercise its lawful discretion, deliberately refraining from any discussion or judgment on facts relevant to the standards legislated in its zoning ordinance. These considerations call for this conclusion:

a. The requirement for a record showing reasons for a zoning decision is denominated a "minimum" necessity. *Honn*, 313 N.W.2d at 416. The mandate is unconditional. Moreover, statement of the demand is accompanied by a warning: the failure to make a record of reasons creates the risk a decision will not be sustained. *Id.*

b. A reversal in the circumstances of this case would undermine the supreme court's announced policy to encourage improved municipal practices in dealing with zoning issues. *Honn* demonstrated the court's demand for compliance with minimum standards. The supreme court subsequently observed that the *Honn* decision had a salutary effect in upgrading local process. *Swanson*, 421 N.W.2d at 312 (holding that thorough municipal efforts should not be wasted by failing to restrict trial proceedings requested by landowners). We conclude it is inappropriate to encourage municipal action without meaningful decisionmaking. The risk of summary judgment, in the special circumstances

---

**3.** The *Honn* trial court compelled the parties to stipulate to the record of what had been presented to the municipal body, and on this basis the trial court refused the presentation of other evidence. *Honn*, 313 N.W.2d at 413. The supreme court remanded and held that the parties were entitled to a trial proceeding. *Id.*, at 417. It is not evident whether the city council in *Honn* had considered or stated reasons for its decision to refuse a rezoning proposal.

here, enhances the prospect for compliance with the dictates of *Honn*.

■ c. *Honn* is not the first case demonstrating that the scope of review is strictly limited by the municipality's identification of reasons for its action. *Inland Constr. Co.* and *Metro 500, Inc.* establish the error of trial court efforts to decide a case on grounds not identified by the municipal council or board. These cases are compelling in the circumstances here. Where the municipality fails to state a single lawful ground for its decision, and also declines to discuss any such reason, *Inland Constr. Co.* and *Metro 500, Inc.* leave the judiciary without any lawful basis to sustain a zoning decision.

d. In circumstances like these, the risk of an unlimited scope for review proceedings has a characteristic of unfairness that has been judicially recognized. In preliminary observations preceding the announcement of procedural rubrics in *Honn*, the court observed that the process should avoid prejudice to landowners in the form of "the risk inherent in any opportunity to rationalize or justify what one has done before." *Honn*, 313 N.W.2d at 416. Similarly, as we have observed, the *Zylka* court cited the dangers in permitting introduction of new reasons "after several months of thought." *Zylka*, 283 Minn. at 199, 167 N.W.2d at 51. Premised on these observations, we have repeatedly observed that the development of new grounds works an unfairness upon applicants by permitting the municipality to "rationalize" its decision. *Curtis Oil v. City of North Branch*, 364 N.W.2d 880, 883 (Minn.App.1985).

e. Mindful of the *Honn* prescription for trial proceedings, we find significant the fact that the *Swanson* court specifically declined to rigidly uphold the right to a trial, sustaining a summary judgment for the municipality where compelled by a thorough and convincing record. *Swanson*, 421 N.W.2d 307. As the court observed of *Honn*: "[I]ts broad language, mandating a trial in every case may go beyond what is necessary in every case." *Id.* at 312.

f. As noted before, a reversal in this case would contradict the efforts of the supreme court to encourage minimum standards for deliberation and decisionmaking by municipal councils and boards. The case before us demonstrates an important interest of the judiciary in this regard. Our reversal would encourage municipal bodies to align themselves with public sentiment against private interests, without deliberation, and to thereby divert to the courts the total burden to resolve sensitive disputes. Neither law nor reason justify delegating to the courts the exclusive decisionmaking role in local government zoning disputes.

g. As has been pointed out in this opinion, the authority of the court is to be invoked "sparingly" in zoning cases. *White Bear Docking & Storage, Inc.*, 324 N.W.2d at 175. We appreciate that the trial court's decision substitutes for local government discretion and decides a zoning issue without deference to the county authorities, their constituents, or to the purposes of the municipal zoning ordinance. But it is evident that the trial court did not seek to favor private interests of respondent or to disregard competing interests. Rather, the circumstances here are no different from those where a municipality has failed to enact an ordinance. The board has failed to exercise its discretion. It has failed to uphold its own ordinance, attempting to deny respondent's petition without any evident deliberation on the ordinance or the facts of the case.

h. As a practical matter, a statement of reasons for a decision is indispensable to judicial review. As *Honn* dictates, identification of the reasons for a decision shapes the scope of review, and the relevancy of new evidence. *Honn*, 313 N.W.2d 409. Unless judicial review is limited in this fashion, the court proceedings become chaotic, a forum for any and all opinions on a permit or zoning proposal.

■ i. The identification of issues enables an appropriate judicial response to a motion for summary judgment. Normally, the trial court decides this motion by examining a litigant's proposed evidence on material fact issues. Upon review of a zoning

decision, this study of evidence would seemingly extend to the record of evidence submitted to the municipal decisionmakers. But without narrowing the issues, this examination of evidence is not feasible. Countless potential reasons for granting or denying a permit may appear in the record. Thus the trial court here declined to examine the significance of any of the potential reasons for denial indicated by the record. It was neither feasible nor lawful for the court to do otherwise.

j. Finally, the summary judgment in this case occurs in extreme circumstances. Although the same defective process would be encouraged by denying a summary judgment, the process otherwise should occur rarely. The county board evidently acted without considering the substantive issues of the case. It failed to decide the merit of constituent concerns, and it failed to deal constructively with its own ordinance. In these unique circumstances, for the reasons we have stated, summary judgment for the permit applicant was appropriate.

## DECISION

Where the applicant for a special use permit makes an adequate showing of entitlement, and the municipality fails to make findings or to otherwise express its reasons for denial, and also fails to engage in any decisionmaking on substantive issues, the applicant's proposed use must be permitted as a matter of law.

**Affirmed.**

LANSING, Judge (dissenting).

I respectfully dissent from the majority's characterization of this issue as one of first impression and its rationale for denying the county a trial. It is well established that the failure of a local governing board to record a legally sufficient basis for denying a conditional use permit makes its decision prima facie arbitrary. *See Honn v. City of Coon Rapids*, 313 N.W.2d 409, 415–16 (Minn.1981). But the board is entitled to an opportunity to rebut the presumption and demonstrate a rational basis at trial with evidence and testimony limited in

scope to those issues raised before the planning commission and the county board. *Id.*

The minutes from the planning commission hearing and the transcript of the county board hearing demonstrate consideration of issues relating to contamination, nuisance, and declining property values. Two letters from a doctoral engineer, read into the record, present a detailed technical critique of a soil roaster's potential impact on both the physical and human environment. Although the council's stated reasons were not expansive, I do not see the deliberate disregard of appropriate standards that the majority finds in the record.

Neighborhood opposition by itself is a legally insufficient basis for a zoning decision, but the reasons for the opposition may well be sufficient and should not be summarily ignored. *See Swanson v. City of Bloomington*, 421 N.W.2d 307, 313–14 (Minn.1988). Minnesota case law protects applicants from after-the-fact justifications by requiring that new or additional evidence be relevant to the issues raised and considered at the hearing. *Honn*, 313 N.W.2d at 416. Preserving the integrity of the evidence weighs against a remand which might allow a board to reconstruct a record, but it does not justify prospectively denying a trial to fully review a record.

In sustaining a summary judgment against the county on these facts, the majority overlooks the review structure created in *Honn* and *Swanson* and elevates a presumption of arbitrariness to an incontrovertible legal conclusion. Both Minnesota appellate courts have previously rejected this construction. *See Board of Supervisors v. Carver County Bd. of Comm'rs*, 302 Minn. 493, 498–99, 225 N.W.2d 815, 819 (1975) (absence of findings and record of deliberations establishes prima facie case of arbitrariness but not per se invalidity); *Kehr v. City of Roseville*, 426 N.W.2d 233, 236 (Minn.App.1988) (presumption of arbitrariness may be overcome by evidence at trial), *pet. for rev. denied* (Minn. Sept. 16,

1988); *see also Uniprop Manufactured Hous., Inc. v. City of Lakeville,* 474 N.W.2d 375, 378 (Minn.App.1991), *pet. for rev. denied* (Minn. Oct. 11, 1991).