ISHEE, J., for the Court.
 

 ¶ 1. On December 14, 2007, the Chancery Court of Rankin County entered a judgment finding John Whitley to be in violation of the City of Brandon’s (the City) ordinances and granting an injunction in favor of the City. The injunction required Whitley to remove all offending vehicles from his property and to refrain from storing any more such vehicles on his property. Aggrieved by the judgment, Whitley appeals. He asserts the following alleged points of error:
 

 I. The chancellor erred in failing to recognize Whitley’s right to continue a nonconforming use of his property after the City’s annexation.
 

 II. The chancellor erred in failing to recognize Whitley’s rights under the Right to Farm Statute, and the City’s nuisance ordinance is unconstitutionally vague.
 

 III. The chancellor erred in refusing to allow Whitley to post a supersede-as bond staying enforcement of the judgment pending the outcome of the present appeal.
 

 Finding no error, we affirm the chancellor’s judgment.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. In May 2007, the City completed its annexation of certain property, which included Whitley’s property located along Highway 471. A number of inoperable motor vehicles, in various states of repair, were located on Whitley’s property. The City notified Whitley via certified letter that he was in violation of city zoning ordinances by parking inoperable and unlicensed motor vehicles on his residential property and not in his driveway. Whitley was given thirty days to comply with the ordinances, and when he failed to come into compliance, the City cited him for three violations. For his violations, the City of Brandon Municipal Court fined Whitley $1,500 plus costs of $288. He then appealed to the County Court of Rankin County.
 

 1Í 3. The City later filed a complaint for injunctive relief in the county court, asking that the court order Whitley to remove the offending vehicles. Whitley objected to jurisdiction in county court, and the case was transferred to the Chancery Court of Rankin County. During the trial, the City offered testimony that the vehicles on Whitley’s property were, for the most part, inoperable junk vehicles. The evidence included a number of photographs depicting the condition of the vehicles. The problem, according to Robbie Powers, with the City’s code enforcement division, was that Whitley’s property was zoned residential, but Whitley maintained forty-six “inoperable, unlicensed, untagged vehicles.” Powers noted that several of the vehicles were dismantled or wrecked. He described them as “basically, abandoned in a pasture.” Additionally, the City offered testimony that storing the number of vehicles that Whitley did, which were in that condition, would decrease the property value in the surrounding properties. Further testi
 
 *485
 
 mony indicated that the inoperable vehicles could lead to health issues, environmental issues, and vandalism on or around the property.
 

 ¶ 4. In a bench ruling on the matter, the chancellor noted that Whitley had been found criminally liable for violating the city ordinances and had been ordered to pay a fine. The chancellor then found that: (1) injunctive relief was appropriate because there was no other adequate remedy at law; (2) the City proved a nuisance based on the potential for irreparable harm or injury; and (3) Whitley was in violation of the city ordinances that, in part, prohibited the storage of inoperative and unlicensed motor vehicles on residential property. The chancellor ordered Whitley to remove all pickups and passenger vehicles on his property, along with the dump trucks and tractor trailers. Excepted from the injunction were a white Chevrolet pickup truck and any vehicle with a current inspection sticker and license tag. Also excepted from the injunction were a forklift, a cattle trailer, a farm tractor, and a front-end loader, provided that each of the vehicles had a current inspection sticker and tag. Whitley timely appealed from this judgment.
 

 ¶ 5. After Whitley filed his appeal from the chancellor’s judgment, the City filed a Motion for Contempt, Permission to Enter Property and Execute on Judgment and Related Relief. Whitley provided a cost estimate to remove the offending vehicles of $1,250, quoted by ACE Auto Sales. It would cost an additional $300 per month to store the vehicles. The chancellor found Whitley to be in contempt and ordered him to comply with the prior judgment by February 29, 2008. Having continuously failed to comply with orders to remove the offending vehicles, the chancellor authorized the Sheriff of Rankin County to incarcerate Whitley until he came into compliance with the judgment of December 14, 2007. Whitley was in jail for eight days, during which time the vehicles were removed from his property.
 
 [1]
 

 STANDARD OF REVIEW
 

 ¶ 6. This Court gives deference to the findings of a chancellor and will not disturb those findings unless they are manifestly wrong, unsupported by substantial evidence, or were the result of the application of an erroneous legal standard.
 
 Keener Props., L.L.C. v. Wilson,
 
 912 So.2d 954, 956(¶ 3) (Miss.2005). However, this Court will review questions of law under a de novo standard.
 
 Id.
 

 DISCUSSION
 

 I. Right to Continue a Nonconforming Use
 

 ¶ 7. Whitley begins by arguing that he, his father, and his grandfather had used the property in question for farming for more than one hundred years prior to it being annexed by the City. He further argues that he used the various vehicles that he stored on the property as storage for his farming equipment and supplies.
 

 ¶ 8. Section 2004 of the City’s Code of Ordinances provides that a lawful nonconforming use of land may continue so long as the use remains lawful. Regarding a party’s right to continue a nonconforming use, the supreme court has stated the following:
 

 
 *486
 
 The nature of the right to a non-conforming use is a property right. It has been held that the right to continue a non-conforming use, once established and not abandoned, runs with the land. It has been held by some courts that any ordinance which takes away that right in an unreasonable manner, or in a manner not grounded in the public welfare is invalid.
 

 Barrett v. Hinds County,
 
 545 So.2d 734, 737 (Miss.1989) (internal citations omitted).
 

 ¶ 9. Amanda Tolsted, the community development and planning director for the City, testified on behalf of the City. She said that Whitley’s property was zoned for low density residential use, and she said that Whitley’s use of the property was agricultural. According to Tolsted, the agricultural use was nonconforming, but she saw no indication that “the inoperable vehicles and the junked cars” were part of any agricultural use of the property. She admitted that some pieces of equipment on the property could be used for agricultural reasons but not the “junked inoperable vehicles.”
 

 ¶ 10. Whitley cites no authority indicating that he should be allowed to maintain a nuisance following rezoning or annexation as he would be allowed to continue a nonconforming use of his land. From the record, it is clear that the chancellor took great care in examining the vehicles, and he allowed Whitley to keep any vehicles that were usable in his farming operation. The judgment also makes it clear that the only vehicles that had to be removed were the inoperable and unlicensed vehicles.
 

 ¶ 11. Ultimately, we find no violation of Whitley’s right to continue his nonconforming use of the land. The inoperable and junked vehicles were a nuisance as defined in the City’s ordinance, and their removal was to benefit the public welfare. The nonconforming-use ordinance allowed for the continuation of a lawful nonconforming use; however, a nuisance is not a lawful nonconforming use. Therefore, we find no merit to this issue.
 

 II. Whitley’s Rights Under the Right to Farm Statute and the City’s Nuisance Claim
 

 ¶ 12. Next, Whitley argues that the City’s nuisance ordinance was unconstitutionally vague and that it was, therefore, improper to enforce the ordinance against him. He also continues to make the argument that he should have been allowed to continue his nonconforming use — a farming operation.
 

 ¶ 13. We see nothing in the record to indicate that the City attempted to preclude Whitley from carrying on his farming operations. Any assertion by Whitley to the contrary is without merit. As previously noted, Tolsted testified that the farming qualified as a nonconforming use.
 

 ¶ 14. “A governmental enactment is impermissibly vague where it fails to provide persons of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.”
 
 Mayor of Clinton v. Welch,
 
 888 So.2d 416, 421(¶ 27) (Miss.2004) (citing
 
 Hill v. Colorado,
 
 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000)). A statute may also be imper-missibly vague “if it authorizes or even encourages arbitrary and discriminatory enforcement.”
 
 Hill,
 
 530 U.S. at 732, 120 S.Ct. 2480 (citing
 
 City of Chicago v. Morales,
 
 527 U.S. 41, 56, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999)).
 

 ¶ 15. In citing Whitley for maintaining a nuisance, the chancellor found that Whitley was in violation of section 34-21(1) of the City’s Code of Ordinances.
 
 [2]
 
 Section
 
 *487
 
 34-21 provides that a nuisance is an act, omission, condition, or thing that “[i]njures or endangers the comfort, repose, health or safety of others.... ” Section 34-22 of the City’s Code of Ordinances further provides a nonexclusive list of examples that constitute nuisances. Applicable to Whitley were the following nuisance examples of nuisances: (1) “Noxious weeds and other rank vegetation”; (2) “Accumulations of rubbish, trash, refuse, junk and other abandoned materials, metals, lumber or other things”; (3) “Any condition which provides harborage for rats, mice, snakes and other vermin”; and (4) “Any accumulation of stagnant water permitted or maintained on any lot or piece of ground.” Furthermore, the chancellor noted testimony that there had been several occasions of vandalism concerning Whitley’s vehicles. For example, vehicle doors had been removed, and their windows and windshields had been smashed.
 

 II16. During cross-examination, Tolsted reiterated the nuisances for which Whitley had been cited. According to Tolsted:
 

 The nuisance is the breeding ground for the vermin. It’s the pollutants that leak into the ground. It’s the — it poses a risk for anyone who comes onto that property because the — the glass and the engine parts — whether they’re invited or not invited on the property, it’s a risk for anyone, and that type of accumulation of junk, it attracts vandalism.
 

 ¶ 17. George Guest, who was admitted as an expert in engineering, testified that, with regard to keeping inoperable vehicles, there were concerns with “fuel, oil, antifreeze, sometimes there’s asbestos in the brakes, mercury in the light switches, ... hydraulic fluids, those type [of] items.” He was also concerned with any leaching into the soil of water that comes off these vehicles and any runoff from Whitley’s property that could affect the City’s water.
 

 ¶ 18. We see no merit to Whitley’s argument that the nuisance ordinance, specifically section 34-21(1), is unconstitutionally vague. We do not address subsections (2) or (3) because the chancellor did not address those and did not find that Whitley had violated them. The ordinance at issue provided a reasonable person an ordinary opportunity to understand the prohibited conduct. Furthermore, an illustrative list of potential nuisances is included in the City’s code at section 34-22. This issue is without merit.
 

 III. Supersedeas Bond
 

 ¶ 19. Rule 62(c) of the Mississippi Rules of Civil Procedure provides the standard by which a party may request that a court stay an injunction pending an appeal. Rule 62(c) provides as follows:
 

 When an interlocutory or final judgment has been rendered granting ... an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of an appeal from such judgment upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party. The power of the court to make such an order is not terminated by the taking of the appeal.
 

 The comment to Rule 62(c) provides that an application for a stay under Rule 62(c) goes to the discretion of the court. M.R.C.P. 62(c) cmt.
 

 ¶ 20. In the present case, the chancellor ordered the City to pay the cost of having the offending vehicles removed, with Whitley to pay the cost of storing the
 
 *488
 
 vehicles. The chancellor also imposed the condition that if Whitley succeeded on appeal, the City would reimburse Whitley for the storage costs.
 

 ¶ 21. We find that the chancellor properly exercised his discretion in refusing to stay the injunction pending the appeal. At the same time, the chancellor granted Whitley an adequate remedy in case he prevailed on appeal. The chancellor had already determined that the vehicles on Whitley’s property posed a threat to the environment and to anyone who entered the property. We see no reason why the chancellor should have stayed the injunction in light of these findings, especially considering that the City would have been responsible for the expenses of moving and storing the vehicles if Whitley had succeeded on appeal. Accordingly, we find that this issue is without merit.
 

 ¶ 22. THE JUDGMENT OF THE CHANCERY COURT OF RANKIN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J, LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . It is unclear from the record how the vehicles were eventually removed from Whitley's property. Whitley claims in his appellate brief that the City removed the vehicles. However, the City denies that it retained ACE Auto Sales to remove the vehicles, and it further denies that anyone affiliated with the City entered upon Whitley's property to remove the vehicles.
 

 [2]
 

 . The chancellor specifically refused to address whether Whitley was in violation of
 
 *487
 
 subsections 34 — 21 (2) — (3) because of what the chancellor saw as a subjective vagueness present in those subsections.