**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1566**

Appeal of John Krenik
to a Vehicle-abatement order
at 1270 Cleveland Avenue

**Filed August 22, 2016
Affirmed
Worke, Judge**

St. Paul City Council
File No. RLH SAO 15-47

Kristian C.S. Weir, Maslon LLP, Minneapolis, Minnesota (for relator John Krenik)

Samuel J. Clark, St. Paul City Attorney, Zachary Brennan Desautels, Assistant City Attorney, St. Paul, Minnesota (for respondents City of St. Paul, St. Paul City Council, and City of St. Paul Department of Safety and Inspections)

Considered and decided by Smith, Tracy M., Presiding Judge; Worke, Judge; and Reilly, Judge.

## S Y L L A B U S

Minn. Stat. § 168.10, subd. 1e (2014), requires more than mere concealment of the aesthetic qualities of a vehicle stored outdoors in order for the vehicle to be "screened from ordinary public view."

## O P I N I O N

**WORKE**, Judge

Relator argues that his use of tarps and a fence is sufficient to meet the screening requirements of Minn. Stat. § 168.10, subd. 1e. Relator also argues that the St. Paul City Council's determination upholding a vehicle-abatement order is arbitrary. We affirm.

**FACTS**

On May 6, 2015, John Ross, an inspector with the City of St. Paul Department of Safety and Inspections, visited relator John Krenik's property after receiving a complaint regarding several vehicles that had not been moved in six months. In Krenik's driveway, Ross observed a Buick without current license tabs and two collector vehicles. Ross directed Krenik to purchase up-to-date license tabs for the Buick. Ross also referenced Minn. Stat. § 168.10, subd. 1e, which requires collector vehicles stored outdoors to be "screened from ordinary public view by means of a fence, shrubbery, rapidly growing trees or other appropriate means."

Krenik later asked Ross whether a tarp would provide a sufficient screen for the two collector vehicles. Ross told Krenik that a tarp would not be sufficient but that Krenik could try a tarp to see if it would "placate[] whoever made the original complaint." Ross subsequently closed the investigation after visiting Krenik's property and observing tarps over the collector vehicles and up-to-date tabs on the Buick.

Ross later responded to another complaint about Krenik's property relating to the two collector vehicles covered by tarps. On June 9, 2015, Ross issued a vehicle-abatement order, stating that the tarped vehicles violated Minn. Stat. § 168.10, subd. 1e, because the tarps did not screen the vehicles from ordinary public view.

Krenik appealed the order and requested a hearing. Prior to the hearing, Krenik constructed a portable wooden fence and placed it in front of the tarped collector vehicles. The roofs of the tarped collector vehicles were visible above the top of the fence. The hearing officer concluded that the vehicles were not screened from ordinary

public view.  Krenik appealed to the St. Paul City Council, which held a hearing and denied Krenik's appeal.  Krenik appeals the city council's decision by writ of certiorari.

## ISSUES

I.    Did Krenik's tarps and fence satisfy the screening requirements of Minn. Stat. § 168.10, subd. 1e?

II.   Are the city council's findings arbitrary?

## ANALYSIS

*Statutory interpretation*

Krenik argues that the tarps and fence adequately screened his vehicles from ordinary public view, satisfying the requirements of Minn. Stat. § 168.10, subd. 1e. Krenik's argument presents a question of statutory interpretation, which we review de novo.  *City of E. Bethel v. Anoka Cty. Hous. & Redev. Auth.*, 798 N.W.2d 375, 379 (Minn. App. 2011).  The object of statutory interpretation is to "ascertain and effectuate the intention of the legislature."  Minn. Stat. § 645.16 (2014).  We first determine whether the statute's language is clear or ambiguous.  *E. Bethel*, 798 N.W.2d at 380. Ambiguity exists when a statute's language is susceptible to more than one reasonable interpretation.  *Id.*

Minn. Stat. § 168.10, subd. 1e, states that

> collector vehicles . . . may be stored in compliance with local government zoning and ordinances on their owners' property, provided that the vehicles and any outdoor storage areas they may require are maintained in such a manner that they do not constitute a health or environmental hazard and are screened from ordinary public view by means of a fence, shrubbery, rapidly growing trees or other appropriate means.

The parties disagree over the meaning of the word "screened." Because Minn. Stat. § 168.002 (2014) does not provide a definition for "screened," the word should be given its "common and approved usage." Minn. Stat. § 645.08(1) (2014). "Screen" means "[t]o conceal from view." *The American Heritage Dictionary* 1622 (3d ed. 1999). "Conceal" means "[t]o keep from being seen, found, observed, or discovered; hide." *Id.* at 390; *see also Black's Law Dictionary* 327 (9th ed. 2009) (defining concealment as "[t]he act of removing from sight or notice; hiding").

The city argues that the vehicles' presence must be hidden from ordinary public view, or in other words, that Krenik's efforts are insufficient because a person could tell that cars are located under the tarps and behind the fence. Krenik argues that the vehicles must be screened so that a person cannot see the condition of the vehicles and, thus, cannot tell whether the vehicles are "junk" cars. Both interpretations are reasonable; thus, the statute is ambiguous.

We are persuaded by the city's interpretation of section 168.10, subdivision 1e. When interpreting a statute, the canon of ejusdem generis states that "general words are construed to be restricted in their meaning by preceding particular words." *See* Minn. Stat. § 645.08(3) (2014); *Black's Law Dictionary* 594 (9th ed. 2009) (defining canon). Section 168.10, subdivision 1e, states that "collector vehicles . . . may be . . . screened . . . by means of a fence, shrubbery, rapidly growing trees or other appropriate means." A fence, shrubbery, and rapidly growing trees are physical objects capable of concealing the presence of the object hidden behind it. Following the canon of ejusdem generis, the

4

legislature did not intend to include a tarp or opaque cover that merely conceals the aesthetic qualities of an object.

Moreover, Krenik's claim that the legislature enacted section 168.10, subdivision 1e, solely for aesthetic purposes is unpersuasive in light of the scope of the statute. Krenik argues that in enacting the statute, the sole "mischief to be remedied" is hiding the appearance of an unsightly collector vehicle. *See* Minn. Stat. § 645.16(3). Such an interpretation, however, is unreasonable because the statute also encompasses vehicles that do not create an "eyesore," such as a well-maintained Ford Model T registered as a pioneer vehicle. *See* Minn. Stat. §§ 168.10, subd. 1e; 168A.01, subd. 16a (defining "[r]estored pioneer vehicle") (2014).

Accordingly, we conclude that the legislature enacted section 168.10, subdivision 1e, not only for aesthetic purposes, but also in the interests of public safety. *See* Minn. Stat. § 168.10, subd. 1e (stating that collector vehicles may be stored outside "provided that the vehicles and any outdoor storage areas . . . are maintained in such a manner that they do not constitute a health or environmental hazard").

Several jurisdictions have recognized that outdoor storage of motor vehicles may lead to vandalism on or around the property. *See Whitley v. City of Brandon*, 15 So.3d 483, 485, 487 (Miss. Ct. App. 2009); *Village of Brady v. Melcher*, 502 N.W.2d 458, 731–32 (Neb. 1993) (stating that vehicles stored outside may "pose an attractive nuisance for children"); *see also* Minn. Stat. § 168B.01 (2014) (stating that abandoned vehicles present a danger "to the safety . . . of children and other citizens"). Here, tarps and a

5

fence that do not conceal the presence of the vehicles from ordinary public view do not advance the public's interest in safety or effectively prevent attractive nuisances.

The legislature's concern for public safety in enacting section 168.10, subdivision 1e, is also reflected by statutes based on similar subjects. *See* Minn. Stat. § 645.16(5) (stating that legislative intent may be determined by "laws upon the same or similar subjects"). Minnesota's statute addressing abandoned motor vehicles states that "[a]bandoned motor vehicles constitute a hazard to the health and welfare of the people of the state in that such vehicles can harbor noxious diseases, furnish shelter and breeding places for vermin, and present physical dangers to the safety and well-being of children and other citizens." Minn. Stat. § 168B.01. Likewise, the "Junk Yard Act" recognizes that junk yards adjacent to trunk highways must be concealed because the junk yards are a "distracting influence on drivers, thereby impairing the public safety." Minn. Stat. § 161.242, subds. 1, 3(a) (2014).

Here, Krenik's neighbor complained that Krenik had not moved the two collector vehicles in six months. Krenik's use of tarps and a fence that do not screen the collector vehicles' presence from ordinary public view does not satisfy the requirements of Minn. Stat. § 168.10, subd. 1e.

### Factual findings

Krenik also argues that the city council's decision is arbitrary. City council decisions "enjoy a presumption of correctness and will be reversed only when they reflect an error of law or when the findings are arbitrary, capricious, or unsupported by substantial evidence." *CUP Foods, Inc. v. City of Minneapolis*, 633 N.W.2d 557, 562

(Minn. App. 2001), *review denied* (Minn. Nov. 13, 2001); *see* Minn. Stat. § 14.69(d)–(f) (2014).  A decision based on whim or devoid of articulated reasons is arbitrary.  *CUP Foods*, 633 N.W.2d at 565.  A decision is also arbitrary if the decision-making body "relied on factors not intended by the ordinance."  *Rostamkhani v. City of St. Paul*, 645 N.W.2d 479, 484 (Minn. App. 2002).

Krenik first argues that the city council's decision is arbitrary because Ross's determination that the tarps and fence were insufficient was based on mere whim.  We are not persuaded.  We will reverse if the *city council*'s findings—rather than Ross's actions—are arbitrary.  *See CUP Foods*, 633 N.W.2d at 565.

Moreover, Ross acted appropriately.  Several courts have recognized that complaint-driven enforcement of city codes is appropriate.  *Jensen v. County of Sonoma*, 444 F. App'x 156, 158 (9th Cir. 2011) ("While a complaint-driven system . . . could theoretically leave some unreported violations unabated, an efficient allocation of limited enforcement resources provides a rational basis for a complaint-based system."); *Noble v. Murphy*, 612 N.E.2d 266, 271 (Mass. App. Ct. 1993) (stating that complaint-driven enforcement did not result in arbitrary, capricious, or discriminatory enforcement).

Krenik next argues that the hearing officer's determination was arbitrary because it relied on an irrelevant city code defining "visual screen."  Again, we are not persuaded because we review the decision of the city council, not the hearing officer.  *See CUP Foods*, 633 N.W.2d at 565.  Additionally, the record does not support Krenik's argument.  The hearing officer recognized the city code definition; however, the hearing officer also

concluded that the tarps and fence do not satisfy the city code or Minn. Stat. § 168.10, subd. 1e.

Krenik finally argues that the city council acted arbitrarily because it did not explain how he failed to satisfy Minn. Stat. § 168.10, subd. 1e. A city council is not required to prepare formal findings of fact, but it must "have the reasons for its decision recorded or reduced to writing and in more than just a conclusory fashion." *White Bear Rod & Gun Club v. City of Hugo*, 388 N.W.2d 739, 742 (Minn. 1986).

The city council viewed photographs of Krenik's vehicles, heard arguments relating to the statutory requirements, and recorded its findings. The city council found that: (1) the tarps alone did not provide a sufficient screen from public view; (2) the fence did not fit "the definition of sufficiently secured from ordinary public view"; (3) Krenik had a garage that could provide a sufficient screen from ordinary public view; and (4) based on previous experiences with Krenik, it appeared that he was capable of building something that could screen the collector vehicles from ordinary public view.

We are not persuaded that the city council acted arbitrarily. First, we afford city council decisions great deference and will set them aside only in "rare instances." *Scott Cty. Lumber Co. v. City of Shakopee*, 417 N.W.2d 721, 727 (Minn. App. 1988), *review denied* (Minn. Mar. 23, 1988). Second, the first two findings provide adequate reasoning to support the city council's decision and are not conclusory because they apply case-specific facts to Minn. Stat. § 168.10, subd. 1e, rather than merely relying on boilerplate language.

Finally, this court considers whether the record supports an agency's decision before reversing the decision. *See Zylka v. City of Crystal*, 283 Minn. 192, 198, 167 N.W.2d 45, 50 (1969) (considering whether the evidence supported the agency's decision when findings of fact were not made). In *Barton Contracting Co. v. City of Afton*, the supreme court reviewed a city's denial of a special-use permit and stated: "If the decision-making body does state reasons, review will be limited to the legal sufficiency and factual basis for those reasons." 268 N.W.2d 712, 717 (Minn. 1978). Here, the city council's decision has adequate factual and legal support. Therefore, the city council's findings are not arbitrary.

## D E C I S I O N

Krenik's tarps and fence did not satisfy the requirements of Minn. Stat. § 168.10, subd. 1e. Additionally, the city council adequately explained its decision and did not act arbitrarily.

**Affirmed.**