## APPEAL OF John KRENIK to a Vehicle Abatement Order at 1270 Cleveland Avenue

### A15-1566

Supreme Court of Minnesota.

Filed: November 1, 2017

Michael C. McCarthy, Julian C. Zebot, Maslon LLP, Minneapolis, Minnesota, for appellant.

Samuel J. Clark, Saint Paul City Attorney, Virginia D. Palmer, Assistant City Attorney, Saint Paul, Minnesota, for respondents.

## OPINION

STRAS, Justice.

The City of Saint Paul issued an abatement order requiring appellant John Krenik to comply with Minn. Stat. § 168.10, subd. 1e (2016), which requires collector vehicles to be "screened from ordinary public view." Krenik had covered his collector vehicles with tarps and later constructed a portable fence across the front of the area where he parked the tarped vehicles, but the vehicles were still partially visible from public areas. The Saint Paul City Council upheld the abatement order, concluding that the tarps and fence did not satisfy the screened-from-ordinary-public-view requirement. The court of appeals affirmed. Because we conclude that Krenik's portable fence and tarps do not screen the collector vehicles from ordinary public view, and that the City Council's decision was not unreasonable, arbitrary, or capricious, we affirm.

## FACTS

Krenik owns two licensed and registered collector vehicles, which he stores on his property. *See* Minn. Stat. § 168.10, subd. 1c (2016) (providing for registration and licensing of collector vehicles). In 2015, an inspector with the City of Saint Paul Department of Safety and Inspections, acting in response to a complaint from a neighbor, inspected Krenik's property, where he found two collector vehicles parked in the driveway. The inspector issued an abatement order requiring Krenik to store the vehicles in compliance with Minn. Stat. § 168.10, subd. 1e, the collector-vehicle-storage statute, which specifies in part that collector vehicles must be "screened from ordinary public view by means of a fence, shrubbery, rapidly growing trees or other appropriate means." Krenik initially covered the vehicles with tarps and called the inspector, who told him that there would be no further action against him in the absence of another complaint. The submission of a new complaint led the inspector to issue a new abatement order, which once again ordered Krenik to comply with the requirements of the collector-vehicle-storage statute.

Krenik appealed the second abatement order to a Legislative Hearing Officer, who upheld the inspector's decision. While the appeal was pending, Krenik constructed a portable fence across his driveway in a further attempt to comply with the screening requirement. Krenik claims, without contradiction from the City, that he built the fence as high as Saint Paul ordinances allow. Although the fence partially obscured the tarped vehicles, it did not do so completely. From the front, onlookers could still partially view the vehicles, both above the fence and through a gap between the ground and the bottom of the fence. The tarped vehicles were also completely visible from each side because the fence covered the vehicles only from the front.

Krenik appealed the Hearing Officer's decision to the Saint Paul City Council. During a hearing, the City Council reviewed various photographs of Krenik's property, including those showing the tarps and the fence, and heard testimony from the Hearing Officer and one of Krenik's neighbors. Based on the evidence, the City Council agreed with the Hearing Officer that Krenik had violated the collector-vehicle-storage statute by failing to sufficiently screen the vehicles from ordinary public view.

Krenik filed a petition for a writ of certiorari to the court of appeals, which affirmed the City Council's decision. *In re Krenik*, 884 N.W.2d 913, 914 (Minn.App. 2016). In doing so, the court interpreted the collector-vehicle-storage statute to require complete screening of collector vehicles. *Id.* at 915-16. Applying its complete-screening interpretation, the court held that the tarps and portable fence did not satisfy the screened-from-ordinary-public-view requirement because onlookers could still partially view the vehicles from the street. *Id.* at 916. The court also rejected Krenik's argument that the City Council's decision was unreasonable, arbitrary, or capricious, concluding that the reasons provided at the hearing were sufficient even in the absence of a written decision. *Id.* at 917.

## ANALYSIS

At issue in this case is the inspector's second abatement order, which ordered Krenik to comply with the requirements of the collector-vehicle-storage statute. Krenik argues that the abatement order is invalid for two reasons. First, he maintains that the City Council, in upholding the inspector's decision, proceeded on the erroneous assumption that the collector-vehicle-storage statute requires complete screening of collector vehicles, when in fact all the statute requires is partial screening to obscure the vehicles' aesthetic qualities. Second, even if the collector-vehicle-storage statute requires complete screening, Krenik argues that the City Council's decision was unreasonable, arbitrary, or capricious because it lacked an adequate explanation and reflected the City Council's will rather than its judgment. Neither of Krenik's arguments has merit.

I.

 ▪ We begin with the interpretive question posed by this case, which is whether the collector-vehicle-storage statute requires complete or partial screening of collector vehicles from ordinary public view. Answering this question requires us to address an issue of statutory interpretation that we review de novo. *Berglund v. Comm'r of Revenue*, 877 N.W.2d 780, 783 (Minn. 2016). "The first step in statutory interpretation is to 'determine whether the statute's language, on its face, is ambiguous.'" *Larson v. State*, 790 N.W.2d 700, 703 (Minn. 2010) (quoting *Am. Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn. 2001)). If a statute is unambiguous, we "apply the statute's plain meaning." *Id.*

Minnesota Statutes § 168.10 (2016) regulates collector vehicles, which consist of an assortment of vehicle types that are a minimum of 10 years old and are "owned and operated solely as a collector's item." *See* Minn. Stat. § 168.10, subds. 1a (defining pioneer vehicles), 1b (defining classic cars), 1c (defining collector vehicles), 1d (defining street rods), 1h (defining collector military vehicles). In addition to exempting collector vehicles from certain motor-vehicle-equipment requirements and standards and creating special registration requirements, the statute also requires collector vehicles to be stored in a certain manner. *See* Minn. Stat. § 168.10. Specifically,

[p]ioneer, classic, collector vehicles, collector military vehicles, or street rods, licensed or unlicensed, operable or inoperable, may be stored in compliance with local government zoning and ordinances on their owners' property, *provided that the vehicles and any outdoor storage areas they may require are maintained in such a manner that they do not constitute a health or environmental hazard and are screened from ordinary public view by means of a fence, shrubbery, rapidly growing trees or other appropriate means.* The appropriate local agency or authority may inform an owner of the owner's failure to comply with these requirements, and may order the vehicles removed from the outdoor storage area if the owner fails to comply with these requirements within 20 days after the warning.

*Id.*, subd. 1e (emphasis added). The second abatement order in this case directed Krenik to comply with the statute's storage requirements or face misdemeanor penalties and involuntary removal of the vehicles from his property at his expense. *See id.*, subd. 4 (providing that it is a misdemeanor "to violate any of the provisions of this chapter").

The parties advance differing interpretations of the collector-vehicle-storage statute. Krenik proposes what is, in essence, a partial-screening interpretation because he argues that the phrase "screened from ordinary public view" requires only the concealment of a vehicle's condition so that individuals passing by cannot tell whether it is a "junk car." In contrast, the City argues that the collector-vehicle-storage statute requires complete screening of collector vehicles, including any outdoor storage areas "they may require," so that, in addition to shielding the characteristics of collector vehicles, an onlooker cannot determine whether vehicles are present on the property at all. We agree with the City's interpretation.

The two key phrases from the collector-vehicle-storage statute are "the vehicles and any outdoor storage areas they may require" and "screened from ordinary public view." The first phrase explains that both the vehicles themselves and their outdoor storage areas are subject to a screening requirement. The second phrase describes the screening requirement itself, which is to screen the vehicles and their outdoor storage areas "from ordinary public view." Only by determining the meaning of these two phrases can we determine which of the two interpretations—Krenik's partial-screening interpretation or the City's complete-screening interpretation—is consistent with the plain meaning of the collector-vehicle-storage statute.

## A.

The first key term in the statute, "vehicles," clearly refers to the list of vehicles appearing earlier in the same sentence: "[p]ioneer, classic, collector vehicles, collector military vehicles, or street rods." Minn. Stat. § 168.10, subd. 1e. Krenik argues that, in this context, the requirement that the "vehicles" be screened from view is motivated by a legislative purpose to prevent the open display of vehicles of debatable aesthetic value—specifically of vehicles that are sometimes found in varying states of unsightly disrepair. Thus, Krenik contends, the statute requires only the screening of the aesthetic qualities of the vehicles. We disagree.

The collector-vehicle-storage statute unambiguously requires "collector vehicles" to satisfy the screening requirement. By statute, vehicles include "every device in, upon, or by which any person or property is or may be transported or drawn upon a highway." Minn. Stat. § 168A.01, subd. 24 (2016); *see* Minn. Stat. § 168.002, subd. 42

(2016) (defining "vehicle" by reference to Minn. Stat. § 168A.01, subd. 24). Collector vehicles, which are a subclass of the larger category of "vehicles," include

> self-propelled motor vehicle[s], including any truck, (1) that [are] (i) at least 20 model years old, or (ii) at least ten model years old and with a body or engine style of which not more than 500 were manufactured in or imported into the United States in any model year, (2) that was manufactured after 1935, and (3) that is owned and operated solely as a collector's vehicle . . . .

Minn. Stat. § 168.10, subd. 1c(a).

These definitions make clear that an owner must screen the "device" or the "self-propelled motor vehicle" itself from ordinary public view, not merely its features or characteristics. To conclude otherwise would require us to add the words "characteristics," "features," or "qualities" to the collector-vehicle-storage statute, something we may not do when faced, as here, with an unambiguous statute.[1] *See Cty. of Dakota v. Cameron*, 839 N.W.2d 700, 709 (Minn. 2013) ("[W]e do not add words . . . to an unambiguous statute.").

■ Moreover, Krenik's interpretation is inconsistent with the whole-statute canon, which requires us to "read and construe a statute as a whole." *State v. Struzyk*, 869 N.W.2d 280, 287 (Minn. 2015). The collector-vehicle-storage statute requires the screening of two items, not just one: the "collector vehicle[ ]" and "any outdoor storage area[ ]" it may require. The statute also subjects both items to the exact same requirement: "screen[ing] from ordinary public view." Krenik fails to explain or apply his qualities-and-characteristics the-

ory to "outdoor storage areas." He does not identify, for example, the relevant qualities and characteristics of an outdoor storage area that a collector must screen from ordinary public view or explain how a collector would screen such theoretical qualities and characteristics. Nor is it clear what type of screen could block the qualities and characteristics of both a vehicle and its outdoor storage area without also screening the presence of the vehicle itself. Accordingly, we conclude that the plain language of the collector-vehicle-storage statute requires the collector vehicle itself, not just its aesthetic qualities or characteristics, to be "screened from ordinary public view."

## B.

■ Now that we have determined that the collector-vehicle-storage statute requires a collector to screen both the vehicle itself and its storage area, the next question is what it means to screen such items from "ordinary public view." The collector-vehicle-storage statute does not define the term "screened." In the absence of a statutory definition, we apply a term's common and approved usage, which we typically identify "with the aid of dictionary definitions." *Wilson v. Mortg. Res. Ctr., Inc.*, 888 N.W.2d 452, 458 (Minn. 2016).

The word "screen" means to "conceal from view or knowledge" or to "hide." *Webster's Third New International Dictionary* 2040 (2002); *see The American Heritage Dictionary of the English Language* 1575 (5th ed. 2011) (defining "screen" as a verb to mean "[t]o conceal from view with a screen or something that acts like a

---

1. For this reason, we will not address Krenik's argument that the City's interpretation is contrary to the legislative purpose of the collector-vehicle-storage statute. *See Christianson v. Henke*, 831 N.W.2d 532, 536 (Minn. 2013) (stating that when "a statute is unambiguous, our role is to enforce the language of the statute and not explore the spirit or purpose of the law" (citation omitted) (internal quotation marks omitted)).

screen," and defining "screen" as a noun to mean something "that serves to protect, conceal, or divide"). "Conceal," in turn, is defined as "[t]o keep from being observed or discovered," *The American Heritage Dictionary of the English Language* 380 (5th ed. 2011), and to "place out of sight," "withdraw from being observed," or "shield from vision or notice," *Webster's Third New International Dictionary* 469 (2002). These definitions suggest that the collector-vehicle-storage statute requires complete concealment of the collector vehicles and their outdoor storage areas from ordinary public view.[2] *See also The American Heritage Dictionary of the English Language* 197 (5th ed. 2011) (listing "screen" as a synonym for "block," and explaining that "[t]hese verbs mean to cut off from sight").

### C.

■ Krenik nevertheless argues that the complete-screening interpretation is both "draconian" and "absurd" because, "in conjunction with other S[aint] Paul City Ordinances," it would prevent vehicle collectors from storing their vehicles outdoors at all. Most residential city lots, he claims, do not allow for screening that would completely conceal a collector vehicle from ordinary public view and, for those that do, complete screening would render it impossible for the vehicle to safely and conveniently enter or exit the residential property. Once again, we disagree.

The unavailability of outdoor storage areas on some residential properties does not undermine our interpretation of the collector-vehicle-storage statute. After all, the statute applies statewide, in both rural and urban areas, and nothing indicates that the statute creates a right allowing all collector-vehicle owners to store their collector vehicles outside, regardless of space or other limitations on residential property. In fact, by stating that collector vehicles "be stored in compliance with local government zoning and ordinances," the collector-vehicle-storage statute implicitly recognizes that, in certain circumstances and in some localities, a collector may not be able to store collector vehicles outdoors. Minn. Stat. § 168.10, subd. 1e.

As for the safety and convenience of the ingress and egress of a collector vehicle from residential property, Krenik's argument ignores the fact that the screen must conceal the vehicle only "from *ordinary* public view," not from every conceivable angle. *Id.* (emphasis added). For example, the collector-vehicle-storage statute clearly does not require a collector to conceal a vehicle and its outdoor storage area from trespassers on the property or from those flying drones over the property. Rather, by its plain language, the statute only requires screening from members of the public found in *typical* locations nearby—such as, for instance, pedestrians walking on the sidewalk in front of the property or drivers viewing the property from the street.

Applying the statute to the facts of this case, we conclude that Krenik's portable fence and tarps do not adequately screen his collector vehicles "from ordinary public view." The tarps not only fail to conceal the presence of the vehicles themselves, but the wheels of each vehicle are fully visible below the tarps. The portable fence

---

**2.** To be sure, one example sentence in *The American Heritage Dictionary* uses the word "screen" to refer to an obstruction that only partially conceals the object on the other side. *The American Heritage Dictionary of the English Language* 1575 (5th ed. 2011) ("Only a narrow line of brush and saplings screened the broad vista of the marsh."). But this single example is not, on balance, sufficient to overcome the clear meaning of the definitions themselves, each of which denotes a complete obstruction of view.

also does not remedy the situation because the tarp-covered top of each vehicle is visible from the street and a gap between the ground and the bottom of the fence allows those walking by the property to see the wheels of both vehicles. Moreover, the fence covers only the front of each vehicle, so anyone passing by can see both the tarped vehicles and their storage areas from the sides. Accordingly, we conclude that Krenik violated the collector-vehicle-storage statute by failing to screen his collector vehicles and their outdoor storage areas "from ordinary public view."

## II.

The second question presented by this case is whether, even if the collector-vehicle-storage statute requires complete screening, the City Council's decision to uphold the inspector's abatement order was unreasonable, arbitrary, or capricious. In general, we have described a local governmental entity's decision as arbitrary and capricious if it reflects its will rather than its judgment, *Rochester City Lines, Co. v. City of Rochester*, 868 N.W.2d 655, 660 (Minn. 2015), or when a decision is "based on whim or is devoid of articulated reasons," *Mammenga v. State Dep't of Human Servs.*, 442 N.W.2d 786, 789 (Minn. 1989). More specifically, a court's role in reviewing a decision made by a local governmental entity is to "determine whether [it] has taken a 'hard look' at the problems involved, and whether it has 'genuinely engaged in reasoned decision-making.'" *Citizens Advocating Responsible Dev. v. Kandiyohi Cty. Bd. of Comm'rs*, 713 N.W.2d 817, 832 (Minn. 2006) (quoting *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 825 (Minn. 1977)).

The crux of Krenik's argument is that, even aside from the question of how to interpret the collector-vehicle-storage statute, the City Council's decision is so

devoid of reasoning or explanation that it was difficult for him to understand, much less allow him to implement corrective measures to comply with the statute's screening requirement. To be sure, Krenik accurately observes that the City Council delivered its decision orally, through the remarks of several City Council members, and it did not ever provide a written decision. But we have long held that a City Council is not required to prepare formal findings of fact. Rather, it is sufficient for a City Council to "have the reasons for its decision recorded *or* reduced to writing," so long as the reasoning is not too "conclusory." *White Bear Rod & Gun Club v. City of Hugo*, 388 N.W.2d 739, 742 (Minn. 1986) (emphasis added) (citation omitted) (internal quotation marks omitted).

In this case, the City Council adequately explained its decision. After reviewing the evidence, a member of the City Council stated the following about Krenik's appeal:

Well, I think, you know, looking at this, one, I don't think the screens or the tarps alone fit the sufficiently screened from ordinary public view. I don't think the current fence contraption or whatever it is fits the definition of sufficiently secured [*sic*] from ordinary public view. There seems to be a very good garage right behind it that may have other things in it but could easily fit the definition of sufficiently screened from ordinary public view. And Mr. Krenik is also—from previous experiences, seems to be very handy and probably could build something that could sufficiently screen from public view.

So in this case, I'm going to make a motion to deny the appeal and uphold the recommendation of the [H]earing [O]fficer.

Although it is true that the City Council could have offered a more elaborate explanation to provide a roadmap for Krenik's

compliance with the collector-vehicle-storage statute, Krenik misunderstands the City Council's role. Its role was to render a decision on his appeal, not to provide advice to Krenik on how to comply with the statute. Nor is it our role at this stage to second-guess the City Council's decision. Rather, we simply must determine whether the City Council adequately explained its decision (it did), whether its decision was influenced by an error of law (it was not), and whether there is adequate evidence in the record to support the City Council's decision (there is). *See Axelson v. Minneapolis Teachers' Ret. Fund Ass'n*, 544 N.W.2d 297, 299 (Minn. 1996) ("A quasi-judicial decision of an agency that does not have statewide jurisdiction will be reversed if the decision is 'fraudulent, arbitrary, unreasonable, unsupported by substantial evidence, not within its jurisdiction, or based on an error of law.'" (quoting *Dokmo v. Indep. Sch. Dist. No. 11*, 459 N.W.2d 671, 675 (Minn. 1990))).

The record shows that the City Council conducted an open hearing and permitted Krenik to present evidence. The City Council had an opportunity to review various photographs of Krenik's property, including those taken from the street and other public locations. In addition, the City considered the testimony of the Legislative Hearing Officer, who explained in detail why Krenik's fence and tarps did not adequately screen the collector vehicles from ordinary public view:

> [Y]ou can see that a temporary fence has been constructed to screen the vehicles. I don't believe that this is sufficiently—there simply isn't enough going on vertically to—to do an actual screen. In addition, it is simply straight. It does not surround the vehicle screening it from view. . . .

What we talked about was basically the abatement order itself indicates that—that the cars are to be screened from ordinary public view. We've got some photographs here where you can see into the vehicles from the sides, and is that actually a screening from ordinary public view? I would say no, I don't believe it is.

Finally, the City Council heard the testimony of one of Krenik's neighbors, who stated that onlookers could still see Krenik's vehicles, even though Krenik had constructed a portable fence in an effort to comply with the collector-vehicle-storage statute.

On this record, and given the fact-intensive—and indeed, distinctively visually based—nature of the determination the City Council was required to make, we conclude that there was sufficient support in the record for the City Council's decision and that it provided an adequate explanation for its decision. Accordingly, we conclude that the City Council's decision was not unreasonable, arbitrary, or capricious.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.

HUDSON, J., took no part in the consideration or decision of this case.